In The

# United States Court of Appeals

### For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

## QUOTEZ TYVICK PAIR,

*Defendant – Appellant.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA AT RICHMOND

———————

## BRIEF OF APPELLANT

———————

**Miriam Ruth Airington-Fisher**
**AIRINGTON LAW PLLC**
**530 East Main Street, Suite 200**
**Richmond, Virginia 23219**
**(804) 774-7117**

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHOROTIES ..........................................................................iii

STATEMENT OF JURISDICTION..................................................................1

STATEMENT OF THE ISSUES......................................................................1

STATEMENT OF THE CASE ........................................................................ 2

ARGUMENT................................................................................................ 10

I.     THE DISTRICT COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS THE INDICTMENT AGAINST HIM BECAUSE HIS CONSTITUTIONAL SPEEDY TRIAL RIGHTS WERE VIOLATED ................................................................. 10

      Standard of Review.................................................................. 10

      Argument and Authority ......................................................... 10

         *Barker* Factors Analysis ....................................................14

II.    THE DISTRICT COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS THE INDICTMENT AGAINST HIM BECAUSE HIS STATUTORY SPEEDY TRIAL RIGHTS UNDER THE SPEEDY TRIAL ACT WERE VIOLATED ................................. 20

      Standard of Review.................................................................. 20

      Argument and Authority ......................................................... 20

III. THE DISTRICT COURT ERRED IN DENYING APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL BECAUSE THE GOVERNMENT'S EVIDENCE WAS INSUFFICIENT TO FIND APPELLANT GUILTY BEYOND A REASONABLE DOUBT OF VIOLATING 21 U.S.C. § 841(a)(1) AS THE GOVERNMENT FAILED TO ESTABLISH APPELLANT WAS THE CRIMINAL AGENT .................................................................. 28

Standard of Review.................................................................. 28

Argument and Authority ......................................................... 28

CONCLUSION................................................................................. 30

REQUEST FOR ORAL ARGUMENT ........................................... 31

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Barker v. Wingo*,
     407 U.S. 514 (1972) ........................................................... 13, 14, 15, 16

*Carson v. Simon*,
     No. 20-3139 (8th Cir. Oct. 29, 2020)...................................................12

*Klopfer v. North Carolina*,
     386 U.S. 213 (1967)............................................................................12

*Maney, et al v. Brown, et al.*,
     Case No. 6:20-cv-00570-SB (ORD Feb. 2, 2021) ............................. 10

*Roman Catholic Diocese of Brooklyn, New York v. Cuomo*,
     592 U.S._____, docket no. No.20A87 (2020) ..................................... 11

*Satcher v. Pruett*,
     126 F.3d 561 (4th Cir., 1997)............................................................. 29

*U.S. v. Archibald*,
     734 F.2d 938 (2d Cir. 1984)............................................................... 29

*U.S. v. Alerre*,
     430 F.3d 681 (4th Cir. 2005) ............................................................ 28

*U.S. v. Beidler*,
     110 F.3d 1064 (4th Cir. 1997)............................................................ 28

*U.S. v. Cowden*,
     882 F.3d 464 (4th Cir., 2018) ........................................................... 28

*U.S. v. Frey*,
     735 F.2d 350 (9th Cir. 1984).........................................................21, 22

*U.S. v. Good,*
    326 F.3d 589 (4th Cir. 2003) ...................................................... 10, 20

*U.S. v. Greene,*
    704 E.3d 298 (4th Cir. 2013) ........................................................... 29

*U.S. v. Olsen,*
    No. 20-50329 (9th Cir. 2021) .................................................... 25, 27

*U.S. v. Penniegraft,*
    641 F.3d 566 (4th Cir. 2011) ............................................................ 28

*U.S. v. Taylor,*
    No. 18-198,
    2020 U.S. Dist. LEXIS 232741 (D.D.C. Dec. 10, 2020) ...................... 17

*U.S. v. Wilkerson,*
    84 F.3d 692 (4th Cir. 1996) .............................................................. 30

*U.S. v. Woolfolk,*
    399 F.3d 590 (4th Cir. 2005) ...................................................... 10, 20

*Zedner v. United States,*
    547 U.S. 489 (2006) ................................................................... 21, 22

## CONSTITUTIONAL PROVISION

U.S. Const. Amend. VI ...................................................... 12, 15, 24

## STATUTES

18 U.S.C. § 323 ....................................................................... 1

18 U.S.C. § 3161(h)(1)(H) .......................................................... 20

18 U.S.C. § 3161(h)(8)(A) ........................................................... 21

18 U.S.C. § 3162(a)(1) .............................................................. 25

18 U.S.C. § 3742 ...................................................................... 1

21 U.S.C. § 841(a)(1) ............................................................... 2

28 U.S.C. § 1291 ...................................................................1

## RULES

Fed. R. App. 4(b)(1) ...............................................................1

Fed. R. App. (b)(6) .................................................................1

## OTHER AUTHORITIES

*Justice Alito's Remarks at Federalist Society's annual National Lawyers Convention* (Nov. 2020) ............................................... 11

The Brookings Institute published "The federal government's coronavirus response - a public health timeline." Philip A Wallach and Justus Meyers, March 31, 2020 ..........................................14

## STATEMENT OF JURISDICTION

This is an appeal from final judgment in a criminal case, entered against Appellant on May ab.27, 2021, in the United States District Court for the District of Virginia, Richmond Division. Joint Appendix at 806. Jurisdiction in the District Court was based upon 18 U.S.C. § 323, as this matter was a prosecution of Appellant by the United States for violations of the United States Code. The Appellant filed a timely notice of appeal on May 27, 2021 and a corrected version on May 28, 2021, requesting the United States Court of Appeals for the Fourth Circuit review the final decision of the District Court as to his conviction and sentencing, pursuant to the jurisdiction conferred on this Court by 28 U.S.C. § 1291. *See* Fed. R. App. P. 4(b)(1), (b)(6); Joint Appendix at 812. This Court therefore has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUES

I.  **THE DISTRICT COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS THE INDICTMENT AGAINST HIM BECAUSE HIS CONSTITUTIONAL SPEEDY TRIAL RIGHTS WERE VIOLATED.**

II. **THE DISTRICT COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS THE INDICTMENT AGAINST HIM BECAUSE HIS STATUTORY SPEEDY TRIAL RIGHTS UNDER THE SPEEDY TRIAL ACT WERE VIOLATED.**

**III. THE DISTRICT COURT ERRED IN DENYING APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL BECAUSE THE GOVERNMENT'S EVIDENCE WAS INSUFFICIENT TO FIND APPELLANT GUILTY BEYOND A REASONABLE DOUBT OF VIOLATING 21 U.S.C. § 841(a)(1) AS THE GOVERNMENT FAILED TO ESTABLISH APPELLANT WAS THE CRIMINAL AGENT.**

## STATEMENT OF THE CASE

On January 21, 2020 a Richmond grand jury returned two true bills on two counts of Distribution of Fentanyl against Appellant. On January 30, 2020, DEA agents arrested Appellant in Henrico. Appellant's first appearance was on January 31, 2020.[1] The district court appointed counsel and issued a temporary detention order. On February 5, 2020, Appellant appeared with his counsel for his arraignment and was ordered detained.[2] At that time, the district court scheduled Appellant's trial for April 6, 2020 at 9:30am. On March 13, 2020, the Eastern District of Virginia issued its first General Order No. 2020-02 generally continuing all civil and criminal jury trials as a result of the COVID-19 pandemic from March 16th through April 17th, 2020.[3] On March 23, 2021, the Eastern District of Virginia issued General Order 2020-06 pertaining speedy trial calculation.[4] On March 24,

---

[1] Joint Appendix at 21.
[2] *Id.* at 22-23.
[3] *See* EDVA General Order 2020-02, and -03 (Mar. 13, 2020).
[4] *See* EDVA General Order 2020-04 (Mar. 23, 2020).

2021, the District issued an additional General Order extending the commencement of trials until May 1, 2020.[5] On March 31, 2020, the Government sought a continuance without objection from Appellant's then-counsel requesting the trial be set for May 27, 2020.[6] On April 6, 2020, the district court granted the Government's motion and cancelled the April 6, 2020 trial, extending the period for commencing Appellant's trial to May 27, 2020.[7] On April 10, 2021, the Eastern District of Virginia issued General Order 2020-12 again postponing criminal in-person trials until June 10, 2020.[8] On April 22, 2020, the district court received Appellant's correspondence requesting new counsel be appointed and advising the district court "no motions were filed on [his] behalf and his rights have been violated . . . ."[9] On April 23, 2020, counsel filed a motion to withdraw and requested that alternate counsel be appointed to Appellant.[10] On April 29, 2020, the district court granted the motion to withdraw and ordered the appointment of new counsel.[11]

---

[5] *See* EDVA General Order 2020-07 (Mar. 24, 2020).
[6] Joint Appendix at 27.
[7] *Id.* at 34.
[8] *See* EDVA General Order 2020-12 (April 10, 2020).
[9] Joint Appendix at 35.
[10] *Id.* at 38.
[11] *Id.* at 40.

A different attorney was appointed to represent Appellant. On May 25, 2020, counsel moved to withdraw as counsel due to concerns over possible exposure to the virus posed by meetings at the jail.[12] On May 26, 2020, the district court granted the motion to withdraw and appointed new counsel.[13] On July 2, 2020, the district court granted a continuance and scheduled the trial for September 30, 2020, noting that the parties agreed the speedy trial date is October 12, 2020.[14] On August 21, 2020, the district court filed Appellant's request for new counsel.[15] On August 25, 2020, the district court required each party to file statements as to their position on Appellant's motion.[16] On September 3, 2020, at the request of the Defense, the motion for new counsel was dismissed, and the parties continued with preparation for trial.[17]

On September 18, 2020, defense counsel filed a motion to continue Appellant's trial based on the need to undergo a necessary medical procedure on September 29, 2020.[18] On September 21, 2020, the district court held a telephonic hearing and defense counsel advised the district court of

---

[12] *Id.* at 41.
[13] *Id.* at 43.
[14] *Id.* at 77.
[15] *Id.* at 78.
[16] Joint Appendix at 90.
[17] *Id.*
[18] *Id.* at 105.

Appellant's opposition to a continuance, and his desire to be tried as soon as possible.[19] On September 22, 2020, the district court granted counsel's motion to continue and ordered new counsel be appointed.[20] Shortly thereafter, the district court appointed undersigned counsel to represent Appellant. Undersigned counsel was appointed on September 22, 2020 and the new trial date was set for December 7, 2020 to permit new counsel adequate time to prepare the case for trial.[21] At that time, undersigned counsel did not have the opportunity to speak to Appellant before setting a new date. Because counsel had been advised by prior counsel that Appellant would want the matter set expeditiously, counsel did not wish to further delay re-setting the trial. However, Appellant did not affirmatively request or consent to the matter being moved from September 24 to December 7.

On October 8, 2020, counsel was provided a copy of a letter from Appellant again raising a violation of his constitutional rights due to his speedy trial rights were being violated. The district court ordered counsel to address the matter via motion no later than October 23, 2020.[22] On October 21, 2020 undersigned counsel filed Appellant's motion addressing the

---

[19] *Id.* at 107.
[20] *Id.* at 128.
[21] *Id.* at 130.
[22] Joint Appendix 131-135.

violation of Appellant's speedy trial rights.[23] On November 16, 2020, the Eastern District of Virginia once again generally continued criminal jury trials until January 19, 2021.[24] Appellant noted his objection to this additional continuance.[25] On December 8, 2020, the district court ordered the parties to file their position on the days that were excluded from the speedy trial calculation. On December 9, 2020, prior to the evidentiary hearing, both parties submitted their respective positions as shown in Appellant's and Government's position on days to exclude from the speedy trial calculation.[26]

On December 9, 2020, the district court held an evidentiary hearing on Appellant's Motion to Dismiss. Attorney Ann Reardon testified as to her representation of Appellant, and confirmed that throughout her representation of Appellant, his focus was to be tried as soon as possible and avoid any unnecessary delays.[27] She reiterated that he did not request any continuance, and that he consistently voiced his frustration at the delays in setting his trial.[28] Prior to the hearing, the parties filed their respective

[23] *Id.* at 136.
[24] EDVA General Order 2020-22 (Nov. 16, 2020).
[25] Joint Appendix at 153.
[26] *Id* at 188-192.
[27] *Id.* at 205.
[28] *Id.* at 15-16.

position on days excluded from the speedy trial calculation.[29] Appellant argued that even with the exclusions he agreed with, he had been awaiting trial for 222 days— well past the 70 days speedy trial requirement under the Speedy Trial Act.[30]  At the conclusion of the hearing, the district court requested all parties file supplemental briefs with the district court to clarify the legal arguments.[31] At that time, the district court set Appellant's trial to be heard on January 19, 2021.  On January 8, 2021, the Eastern District of Virginia, again extended criminal jury trials on the basis of the pandemic until February 28, 2021.[32] That general order excluded the period of January 19 through February 28, 2021 from speedy trial calculations. The district court continued Appellant's trial and rescheduled it to be heard on March 8, 2021. On January 27, 2021, the district court denied Appellant's motion to dismiss the indictments against him for violation of his rights under the Speedy Trial Act, and on February 26, 2021 the district court denied Appellant's motion to dismiss the indictment for violation of his constitutional speedy trial rights.[33] Appellant appealed the denials of his speedy trial violations to this Court, but as the matter was not yet ripe,

---

[29] *Id.* at 189-192.
[30] Joint Appendix at 189.
[31] *Id.* at 233.
[32] EDVA General Order 2021-01 (Jan. 8, 2021).
[33] *Id.* at 304 and 343.

requested this Court with the consent of the Government to withdraw the appeal *without prejudice* to Appellant.[34] This Court granted Appellant's motion on February 16, 2021.

On March 8, 2021, Appellant's trial began. As part of its case in chief, the Government called Timothy Newton, a confidential informant used to conduct the controlled buys used to indict Appellant.[35] Mr. Newton testified that his involvement as a confidential informant began when law enforcement conducted a search of his home and found approximately 1 kilogram of heroin, various guns and money.[36] Mr. Newton testified that he was placed in handcuffs and asked to cooperate.[37] Mr. Newton clearly testified that he became a cooperator with the goal of improving his own situation, either through avoiding criminal charges or mitigating charges. Though nothing was explicitly promised, it was clear to all parties that Mr. Newton's motivation was, in his words, "to help [him]self as much as [he] could."[38] Mr. Newton agreed to become a confidential informant and began providing names to Detective Wallace and Detective Phillips. The Government's evidence was that Mr. Newton identified Appellant as "Cortez"

---

[34] *Id.* at 340, 342.
[35] Joint Appendix at 435
[36] *Id.* at 436.
[37] *Id.*
[38] *Id.* at 437.

and arranged two controlled buys, one October 30, 2019 and November 12, 2019.[39] Detective David Phillips testified that he knew Appellant's voice and appearance from working that neighborhood as a patrolman.[40] No voice exemplar was introduced at trial. No officer visually observed the controlled buys; Mr. Newton was fitted with a recording device. The videos were entered into evidence, and at trial Mr. Newton identified Appellant as the person from whom he purchased heroin.[41] Of note, Mr. Newton had previously testified that he did not know Appellant well, but rather from around the neighborhood.[42] His in-court identification was cursory, and Appellant was not asked to remove his mask for the identification.

On March 10, 2021, after a two-day jury trial, the jury returned a guilty verdict against Appellant. On March 22, 2021, Appellant filed a Motion for Acquittal which the district court denied on March 26, 2021.[43] On May 20 and May 24, 2021 the district court conducted Appellant's sentencing hearing.[44] The district court sentenced Appellant to a term of imprisonment

---

[39] *Id.* at 438-440.
[40] *Id.* at 511.
[41] *Id.* at 448-449.
[42] Joint Appendix at 542.
[43] *Id.* at 565, 582.
[44] *Id.* at 801.

of 144 months on Count 1 and Count 2 to be served concurrently.[45]   This

Appeal follows.

## ARGUMENT

**I.    THE DISTRICT COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS THE INDICTMENT AGAINST HIM BECAUSE HIS CONSTITUTIONAL SPEEDY TRIAL RIGHTS WERE VIOLATED.**

### Standard of Review

"Appellate courts review a district court's factual findings on a motion

to dismiss an indictment for clear error, but they review its legal conclusions

de novo." *United States v. Woolfolk*, 399 F.3d 590, 594 (4th Cir.

2005)(citing to *United States v. Good*, 326 F.3d 589, 591 (4th Cir. 2003).

### Argument and Authority

"Our constitutional rights are not suspended during a crisis. On the

contrary, during difficult times we must remain the most vigilant to protect

the constitutional rights of the powerless. Even when faced with limited

resources, the state must fulfill its duty of protecting those in custody."

*Maney, et al v. Brown, et al.*, Case No. 6:20-cv-00570-SB, at 3 (ORD Feb. 2,

2021). The COVID-19 pandemic brought with it "previously unimaginable

restrictions on individual liberty" and "served as a sort of constitutional

_____

[45] *Id.* at 806.

stress test." *Justice Alito's Remarks at Federalist Society's annual National Lawyers Convention* (Nov. 2020). However, despite the unprecedented scenarios it posed, the United States Supreme Court recognized a line had to be drawn when using the pandemic as a reason to restrict individuals 'access to their constitutional rights. In *Roman Catholic Diocese of Brooklyn, New York v. Cuomo*, the Supreme Court granted the petitioner's request for a preliminary injunction against COVID-19 related regulations, and held that the government failed to demonstrate damage to the public as there was no evidence the applicants contributed to the spread, nor was there evidence that allowing *more than 10 individuals* in the establishments in question would create a higher health risk for the public, in light of the size of the establishments, and other activities allowed by the state of New York. Justice Gorsuch emphasized in his concurring opinion that "[e]ven if the Constitution has taken a holiday during this pandemic, it cannot become a sabbatical."[46]

Similarly, the United States Court of Appeals for the Eight Circuit  on a case involving the extension of the statutory imposed deadline of receiving and counting presidential electoral ballots, remarked that "[t]here is no

---

[46] *Roman Catholic Diocese of Brooklyn, New York v. Cuomo*, 592 U.S._____, docket no. No.20A87 (2020).

pandemic exception to the Constitution," holding that an extension of the statutory deadline likely violated the Constitution.[47] While these cases don't deal with speedy trial violations, they are instructive when evaluating challenges of an individual's access to his Constitutionally afforded rights during the pandemic as the present case poses.

The Sixth Amendment to the United States Constitution provides the accused in a criminal prosecution with the right to a speedy and public trial by an impartial jury. "The Speedy Trial Clause implements [the] presumption [of innocence afforded to an accused] by 'prevent[ing] undue and oppressive incarceration prior to trial, . . . minimiz[ing] anxiety and concern accompanying public accusation [,] and . . . limit[ing] the possibilities that long delay will impair the ability of an accused to defend himself.'" The United States Supreme Court has highlighted the importance of this Clause assigned to it by the Framers of the Constitution by citing to the words Sir Edward Coke's Institutes of the Laws of England, who wrote that "'the innocent shall not be worn and wasted by long imprisonment, but . . . speedily come to his tria[l].'"[48]

---

[47] *Carson v. Simon*, No. 20-3139 at 12 (8th Cir. Oct. 29, 2020).
[48] *See Klopfer v. North Carolina*, 386 U.S. 213 (1967).

An accused's rights under this Clause are triggered by "either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge." In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court of the United States devised a four-factor balancing test to determine whether there has been a violation of the accused's *constitutional* right to have a speedy trial: "(1) whether the delay was uncommonly long; (2) what the reason was for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether prejudice resulted to the defendant."

Prior to Appellant's trial, the Eastern District of Virginia issued a series of General Orders continuing criminal jury trials due to the pandemic, with some specifically including the period of time covered by the orders would not be included in defendants' speedy trial calculation. To date, the appropriateness of those orders as applied to individual defendants does not appear to have yet been addressed. To that end, Appellant's challenge at the district court level and now at the appellate level appear to be an issue of first impression. Appellant argues the district court erred in holding that Appellant's constitutional rights as it relates to his speedy trial were not violated and that the General Orders were adequately issued.

<u>*Barker* Factors Analysis</u>

The length of the delay in Appellant's case was caused largely due to the improper blanket continuances adopted by the district court in his case as a result of the pandemic. As acknowledged by the district court, the length of delay in Appellant's case is "presumptively prejudicial."[49] In examining the reason for the delay, *Barker* informs how we should treat the COVID-19 related continuances taken in Appellant's case. There is a compelling argument that pandemic-related court closures and continuances are attributable to the federal government. A report published earlier this year on the federal government's response to the COVID-19 crisis concludes that inaction in January, February, and March 2020 allowed the virus to surge unmitigated.[50] While the actions and inactions of the federal government will likely continue to be evaluated in months and years to come, what is known is that as early as January 2020, federal government officials were briefed on the coronavirus. Widespread closures, such as the one prompting General Order 2020-02, did not occur until mid-March 2020. In this regard, it is reasonable to attribute the closure and continuance to the federal

---

[49] Joint Appendix at 351.

[50] The Brookings Institute published "The federal government's coronavirus response - a public health timeline." Philip A Wallach and Justus Meyers, March 31, 2020. https://www.brookings.edu/research/the-federal-governments-coronavirus-actions-and-failures-timeline-and-themes/

government. Under that theory, such an extensive delay to trial created by the government's action or inaction would unquestionably violate both the Speedy Trial Act and the Sixth Amendment guarantees.

The best argument that can be made for the improper blanket continuances is that they were neutral in character. However, based on the Supreme Court's decision in *Barker* such a position is not likely to survive muster in this case. In *Barker*, while the Supreme Court held that a "more neutral reason such as negligence or overcrowded courts should be weighted less heavily," the Court held that such reason should still be considered given that "the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."[51] Just as a crowded docket or courtroom is not attributable to the defendant, neither is a pandemic.

In Appellant's case, the continuance orders related to COVID-19 merely stated the General Orders had been incorporated and simply provided the copy of the text included in those orders. It did not address Appellant's circumstances, the length of his detention, the presence of the virus in the facility where he was held, or an individualized reasoning as to his continued detention without bond. The lack of individualized assessment

---

[51] *Barker*, 407 U.S. at 531.

in the continuances are such that these delays should have weighed in his favor to dismiss the indictment against him.

In its denial of Appellant's motion to dismiss his indictment, the district court held it could correct a *substantive* error in its previous continuance orders for failure to conduct an individualized assessment of Appellant when issuing blanket continuances of his case.[52] This argument is misplaced. It cannot be the case that a district court significantly violates an individual's constitutional rights, and once the accused raises the issue, the district court retroactively corrects its error several months later with nothing in the record to corroborate there was an individualized assessment as to how the blanket continuances affected Appellant and whether they were properly applied to him.

The prejudice prong "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." These interests include "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." In *Barker*, the Court stated that while societal disadvantages were to be considered, "the disadvantages for the accused who cannot obtain his release are even more serious. The time spent

---

[52] Joint Appendix at 317.

in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness." The Court further explained that "[i]mposing those consequences on anyone who has not yet been convicted is serious." In this case, Appellant was held pretrial at Pamunkey Regional Jail, a facility which has been reported by local media to have extremely high rates of infection. Additionally, his familial relationships and his employment were affected by his nearly year long pretrial incarceration. Appellant's thirteen months pretrial detention during an unprecedented pandemic without the ability to exercise the health proper health measures, is a compelling prejudice to a defendant.

The district court likened Appellant's case to that of *U.S. v. Taylor*, No. 18-198, 2020 U.S. Dist. LEXIS 232741 (D.D.C. Dec. 10, 2020), for the proposition that Appellant has never advanced an argument as to how jury trials— as a whole— in the Eastern District of Virginia would have continued taking place had the Government acted with urgency as it related to the pandemic.[53] As Appellant argued before the district court, it is not his nor any defendant's responsibility to bring themselves to trial; that duty rests with the Government. There was ample time for the Government and the Courts to devise a plan, such as that ultimately implemented at Appellant's

---

[53] Joint Appendix at 357.

trial, in which the jury would feel safe, and the health of the court personnel, attorneys, jurors and Appellant was adequately preserved. The availability of video and telephonic conferences, along with access to electronic communication, provided ample mediums through which a task force devised to come up with a strategy in which an accused's speedy trial rights were not violated could have been created. Arguing that Appellant could not cite to case law to support this argument is improper, as it was not his job, and this issue had not and to this date has not been addressed by many courts as it relates to the appropriateness of the general orders.

Appellant submits that the general orders within themselves were improper and the length of the suspension was unjustified. Furthermore, as applied to Appellant's case they were unlawful as Appellant did not receive an individualized assessment at the time his case was continued time and time again.

Appellant further disagrees with the district court's characterization of his untimely assertion of his speedy trial rights.[54] Appellant has been adamant since his arraignment that he wanted to have his trial within the speedy trial time period. Prior to the initial COVID-19 related continuance in March 2020, Appellant advised his counsel he did not want his case to be

---

[54] Joint Appendix at 363.

continued and requested an objection be noted. Counsel at the time, acquiesced to the Government's continuance request, invalidating Appellant's request. On April 22, 2020, after the district court's granting of the first COVID-19 related continuance, Appellant, by way of written letter, requested new counsel given that his wishes were not being communicated and "no motions were filed on [his] behalf and his rights have been violated . . . ."[55] This was Appellant's effort to assert his rights in the absence of help from his then counsel. While this Court and the U.S. Supreme Court have held represented defendants to a high standard in asserting their speedy trial rights, Appellant did the best he could given his prior counsels failure to bring forth his concerns to the district court. Appellant communicated by way of various letters making the district court known his constitutional rights were being violated. Given that Appellant does not hold a legal degree, his vigorous assertions that his constitutional rights were being violated in context of the timing of those assertions, should be sufficient to hold that Appellant timely asserted his rights.

---

[55] *Id.* at 35.

## II. THE DISTRICT COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS THE INDICTMENT AGAINST HIM BECAUSE HIS STATUTORY SPEEDY TRIAL RIGHTS UNDER THE SPEEDY TRIAL ACT WERE VIOLATED

### Standard of Review

"Appellate courts review a district court's factual findings on a motion to dismiss an indictment for clear error, but they review its legal conclusions de novo." *United States v. Woolfolk*, 399 F.3d 590, 594 (4th Cir. 2005)(citing to *United States v. Good*, 326 F.3d 589, 591 (4th Cir. 2003).

### Argument and Authority

The Speedy Trial Act requires a trial to commence within seventy (70) days from the filing date of the indictment or information, or from the accused's first appearance, whichever is later. The Act provides for certain time exclusions from the calculation, such as delays caused by pretrial motions, and any "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court . . . ."[56] In calculating the seventy

---

[56] 18 U.S.C. § 3161(h)(1)(H).

days, the Act excludes certain time periods, including periods related to the filing and resolution of pre-trial motions.

Additionally, if the trial judge grants a continuance "on the basis of his findings that the ends-of-justice is served by taking such action outweigh the best interest of the public *and* the defendant in a speedy trial," such continuance would be excluded from the calculation.[57] The trial judge would have to make express findings, and state "its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial."[58] Such findings must be made at the time the order is entered. At the very least, 18 U.S.C. § 3161(h)(8)(A) "implies that those findings must be put on the record by the time the district court rules on the motion to dismiss."[59] While the "ends-of-justice" phrase has not been ascribed a specific or restrictive meaning and is perceived as a "catch-all" provision, Congress intended for it to be "'rarely

---

[57] 18 U.S.C. §3161(h)(7)(A)(emphasis added).
[58] *Id.*
[59] *Zedner v. United States*, 547 U.S. 489, 506-507 (2006).

used.'"[60] A continuance under this subsection is appropriate "if without a continuance, holding the trial would be *impossible*."**[61]**

*In Zedner v. United States*, the Supreme Court of the United States made it clear that prior to the district court granting a continuance under the "ends-of-justice" exclusion, it first must conduct a balancing test and then make an on-the-record "interest of justice" finding of fact before granting the continuance.[62] Failure to make such finding of fact would be fatal, and the claimed exclusion would not stop the clock. This decision sets the tone for the importance of making individualized findings as it relates to actions that may impact an accused's speedy trial clock. This reasoning is in line with the Supreme Court's holding in *Zedner*, where it held that district courts were squarely responsible for managing the court calendar so as to comply with the Act.

---

[60] *See U.S. v. Frey*, 735 F.2d 350 (9th Cir. 1984) *("Congress required the district court to "set forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice [would be] served" by granting the excludable delay. See 18 U.S.C. § 3161(h) (8) (A); H.R.Rep. No. 1508, 93rd Cong., 2d Sess. 33, reprinted in 1974 U.S.Code Cong. & Ad.News 7401, 7426 (reasons must be "set forth with particularity'"*).

[61] 18 U.S.C. §3161(h)(7)(B)(i)(emphasis added).

[62] *Zedner v. United States*, 547 U.S. 489, 506-507 (2006); *See also U.S. v. Frey*, 735 F.2d 350 (9th Cir. 1984)(holding that a district court cannot make a retroactive application of an ends-of-justice finding, intending for it to have the effect similar to a *nunc pro tunc* order).

Appellant submits the district court erred in holding the periods between March 16 through September 22, 24 of 2020, as well as from September 24, 2020 through January 2021 were excluded from Appellant's speedy trial calculation. The continuances taken as result of the General Orders issued by the Eastern District of Virginia on the basis of the pandemic continuing jury trials in criminal cases through September 14, 2020 were improperly incorporated in Appellant's case. Only the April 6, 2020 continuance order addressed the continuance issued due to the pandemic. The April 6, 2020 order is perfunctory and incorporates only General Orders 2020-02, 06, 07, and only extended the time to commence Appellant's trial to May 27, 2020. While other General Orders were issued carrying over the continuance of criminal jury trial through September 13, 2020, no separate orders were issued incorporating those orders and making specific findings in which the Court considered Mr. Pair's circumstances.

The April 6, 2020 continuance order does not comply with the requirements to satisfy the ends of justice exception because it makes no mention of the specific circumstances considered regarding Mr. Pair's case, such as whether it considered the Defendant's detention at an enclosed facility unable to adequately social distance, or whether it had evaluated whether the correctional facility Mr. Pair was being held at had suffered from

COVID-19 outbreaks at the time the order was issued. Additionally, the order failed to state the date it deemed Mr. Pair's speedy trial to be, despite the fact that General Order 2020-07, which the Court noted on its order, specifically advised that "[a]s to trial continuances, judges of this Court will handle *case specific* speedy trial findings at the appropriate time." The record does not reflect consideration of Mr. Pair's own prolonged exposure to the virus in a facility he could not properly distance, to some extent shows Mr. Pair's specific potential prejudice was not considered. Here, the public's interest should be balanced with the defendant's interest.

The Act was enacted "to give effect to the sixth amendment right to a speedy trial," and strict compliance is required in order to safeguard Mr. Pair's rights, which included making specific findings as to the Court's analysis of the prejudice such continuance would have on Mr. Pair. The orders issued by this Court after April 6, 2020 which set commencement of the trial as May 27, 2020, only dealt with the appointment of new counsel, and setting of new trial date. Those orders did not mention or incorporate by reference the General Orders which extended the suspension of jury trials to September 13, 2020. Only the July 2, 2020 order mentions in a footnote "the parties agreed that the speedy trial date is October 12, 2020."[63] This is also

---

[63] Joint Appendix at 19.

important as it further lends credence to the argument that the Order did contain individualized findings. As stated in the previous section, the district court cannot retroactively correct a speedy trial violation properly raised by a defendant once the harm has been done.

The Speedy Trial Act of 1974 requires that an indictment be dismissed if the defendant is not brought to trial within a 70-day period, and requires the court, in determining whether to dismiss with or without prejudice, to "consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances . . . which led to the dismissal; and the impact of a reprosecution on the administration of [the Act and] of justice."[64] In this case, a thirteen-month pretrial detention is a compelling prejudice to a defendant. A reprosecution under these circumstances would be unjust.

Due to the novel nature of the pandemic, and lack of applicable precedent, Appellant also engages in the analysis of the factors advanced by the Ninth District Court of Appeals in *U.S. v. Olsen*, No. 20-50329 (9th Cir. 2021) as being relevant to be considered in light of the pandemic. The Ninth District found relevant the following non-exhaustive factors:

> (1) whether a Appellant is detained pending trial; (2) how long a Appellant has been detained; (3) whether a Appellant has

---

[64] 18 U.S.C. § 3162(a)(1).

invoked speedy trial rights since the case's inception; (4) whether a Appellant, if detained, belongs to a population that is particularly susceptible to complications if infected with the virus; (5) the seriousness of the charges a Appellant faces, and in particular whether the Appellant is accused of violent crimes; (6) whether there is a reason to suspect recidivism if the charges against the Appellant are dismissed; and (7) whether the district court has the ability to safely conduct a trial.[65]

As detailed in the previous section, Appellant was detained while awaiting trial for *thirteen* months. Appellant has been adamant since his arraignment that he wanted to have his trial within the speedy trial time period. Prior to the initial COVID-19 related continuance in March 2020, Appellant advised his counsel he did not want his case to be continued and requested an objection be noted. Counsel at the time, acquiesced to the Government's continuance request, invalidating Appellant's request. On April 22, 2020, after the district court's granting of the first COVID-19 related continuance, Appellant, by way of written letter, requested new counsel given that his wishes were not being communicated and "no motions were filed on [his] behalf and his rights have been violated . . . ."[66] On April 29, 2020, the district court ordered new counsel to be appointed, however, on May 25, 2020, the newly appointed counsel withdrew from representing Appellant. Attorney Ann Reardon was appointed to represent Appellant. At

---

[65] *U.S. v. Olsen*, No. 20-50329 at 19 (9th Cir. 2021).
[66] Joint Appendix at 35.

the December 9, 2020 evidentiary hearing, Ms. Reardon expressed that throughout her representation of Appellant, his main focus was to be tried as soon as possible and avoid any unnecessary delays. The timing of Appellant's letter in April advising no motions had been filed on his behalf and alleging his rights had been violated was his attempt as a non-attorney, lay person to invoke his speedy trial right. This is further made apparent by Ms. Reardon's testimony regarding Appellant's insistence on him being tried as soon as possible. Appellant relied on each of his attorneys to formally convey to the district court that he was invoking his speedy trial rights from the very first continuance. His previous counsels 'failure to object to the blanket continuances and formally invoke Appellant's speedy trial rights as he had been requesting should not be negatively attributed to Appellant. Appellant did everything he could with the limited knowledge he had to assert his right to be tried within the 70-day statutory period, and thus he should be deemed to have invoked his speedy trial rights from the inception of the case.

Appellant contends the prejudice to him was not considered because the record is devoid of consideration of Appellant's own prolonged exposure to the virus in a facility where he could not properly distance. Because Appellant was not charged with a violent crime, and the district court had

the ability to safely conduct a trial, as shown by Appellant's March trial where the courtroom was rearranged in a manner in which it provided ample separation between the jurors, face masks were required, and most of the U.S. population had not been vaccinated, the factors advanced in *Olsen* would weigh in favor of Appellant.

**III. THE DISTRICT COURT ERRED IN DENYING APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL BECAUSE THE GOVERNMENT'S EVIDENCE WAS INSUFFICIENT TO FIND APPELLANT GUILTY BEYOND A REASONABLE DOUBT OF VIOLATING 21 U.S.C. § 841(a)(1) AS THE GOVERNMENT FAILED TO ESTABLISH APPELLANT WAS THE CRIMINAL AGENT.**

### Standard of Review

A district court's denial of a motion for judgment of acquittal is reviewed de novo. *United States v. Alerre*, 430 F.3d 681, 693 (4th Cir. 2005). "An Appellant challenging the sufficiency of the evidence" on appeal faces "a heavy burden." *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997) (citation and internal quotation marks omitted). This Court views the evidence in the light most favorable to the government, and sustains the jury's verdict if it is supported by *substantial* evidence. *United States v. Penniegraft*, 641 F.3d 566, 571–72 (4th Cir. 2011)(emphasis added). Evidence is deemed "substantial" if a reasonable finder of fact could view the

evidence as establishing the Appellant's guilt beyond a reasonable doubt. *United States v. Cowden*, 882 F.3d 464 (4th Cir., 2018).

## Argument and Authority

The Supreme Court has recognized that "the confrontation compelled by the State between the accused and the victim or witnesses to a crime to elicit identification evidence is particularly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial."[67] In this case, Appellant challenged the identification of the government's cooperating source and star witness, Timothy Newton, based on both the cursory nature of the identification and the significant motive and bias Mr. Newton had to testify for the Government. At trial, Mr. Newton admitted he didn't know Appellant very well and admitted he would do anything "to help [him]self as much as [he] could." This Court has previously recognized that in-court identifications are obviously suggestive "when it is clear who is the defendant . . . Even the best intentioned among us cannot be sure that our recollection is not influenced by the fact that we are looking at a person we know the Government has charged with a crime." *U.S. v. Greene*, 704 E.3d 298, 306-307 (4th Cir. 2013)( quoting to *U.s. v. Rogers*, 126 F.3d

---

[67] *Satcher v. Pruett*, 126 F.3d 561 (4th Cir., 1997)(quoting *United States v. Wade*, 388 U.S. 218, 228 (1967)).

655, 658 (5th Cir. 1997) holding that "it is obviously suggestive to ask a witness to identify a perpetrator in the courtroom when it is clear who is the defendant. . . . Even the best intentioned among us cannot be sure that our recollection is not influenced by the fact that we are looking at a person we know the Government has charged with a crime."); *U.S. v. Archibald*, 734 F.2d 938, 942-43 (2d Cir. 1984); *U.S. v. Wilkerson*, 84 F.3d 692 (4th Cir. 1996).

Because Appellant's trial took place during the COVID-19 pandemic, the jury was not given the opportunity to view Appellant close enough to see his face, his tattoos, or his hands. The Government conceded that at trial, Appellant looked markedly different than the person on the videos of the controlled buys. Mr. Newton testified that he did not know Appellant well.[68] This evidence, without more, was insufficient to find Appellant to be the criminal agent portrayed in the videos and Mr. Newton's testimony bears little to no credibility given his particular interest in providing self-serving testimony for the government.

## <u>CONCLUSION</u>

For the foregoing reasons, Appellant prays this Court REVERSE the ruling of the District Court and VACATE his conviction and sentence.

---

[68] Joint Appendix at 466.

## **REQUEST FOR ORAL ARGUMENT**

Counsel for Appellant asserts that the issues raised in this brief may be more fully developed in oral argument, and respectfully requests the same.

Respectfully Submitted,

Quotez T. Pair
By Counsel

/s/ Miriam Airington-Fisher
Miriam Airington-Fisher, VSB 78260
AIRINGTON LAW
530 East Main Street Suite 200
Richmond, Virginia 23219
Telephone: (804) 774-7117
Facsimile: (804) 597-5424
mairington@airingtonlaw.com

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    [ X ] this brief contains [*6,397*] words.

    [  ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.  This brief complies with the typeface and type style requirements because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Georgia*]; *or*

    [  ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: <u>July 30, 2021</u>          <u>/s/ Miriam Airington-Fisher</u>
                                   *Counsel for Appellant*

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 30th day of July, 2021, I caused this Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Jacqueline Romy Bechara
OFFICE OF THE U.S. ATTORNEY
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3819

*Counsel for Appellee*

Olivia L. Norman
OFFICE OF THE U.S. ATTORNEY
919 East Main Street, Suite 1900
Richmond, Virginia 23219
804) 819-5475

*Counsel for Appellee*

I further certify that on this 30th day of July, 2021, I caused a copy of the Sealed Volume of the Joint Appendix to be served, via UPS Ground Transportation, upon counsel for the Appellee, at the above addresses.

/s/ Miriam Airington-Fisher
*Counsel for Appellant*