IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

No. 21-4269

———————

UNITED STATES OF AMERICA,

*Appellee,*

v.

QUOTEZ TYVICK PAIR,

*Appellant.*

———————

Appeal from the United States District Court
for the Eastern District of Virginia
at Richmond
*The Honorable Robert E. Payne, Senior District Judge*

———————

BRIEF OF THE UNITED STATES

———————

Raj Parekh                          Olivia L. Norman
Acting United States Attorney        Assistant United States Attorney
                                     919 E. Main Street, Suite 1900
Jacqueline R. Bechara               Richmond, Virginia 23219
Assistant United States Attorney     (804) 819-5400


*Attorneys for the United States of America*

# Table of Contents

Page

Table of Authorities ................................................................................ iv

Introduction ............................................................................................. 1

Issues Presented ..................................................................................... 2

Statement of the Case ............................................................................. 3

    A.    After two controlled buys, a grand jury indicts defendant for
two counts of distributing fentanyl. ...................................... 3

    B.    The Chief Judge suspends criminal jury trials in the Eastern
District of Virginia from March 16, 2020 through May 1, 2020
due to the COVID-19 pandemic............................................. 4

    C.    The district court grants the government's unopposed motion to
continue the trial date from April 6, 2020 to May 27, 2020 due
to the COVID-19 pandemic. .................................................. 7

    D.    Defendant's first and second attorneys withdraw from the
representation. ....................................................................... 8

    E.    The Chief Judge suspends criminal jury trials in the Eastern
District of Virginia from May 2, 2020 through September 13,
2020 due to the COVID-19 pandemic. .................................. 9

    F.    The district court sets the case for trial on September 30, 2020. ........ 11

    G.    The district court denies defendant's pro se motions to appoint
new counsel. ......................................................................... 11

    H.    The district court grants defense counsel's motion to continue
based on her need for urgent surgery and sets the case for trial
on December 8, 2020............................................................. 12

I.      Defendant moves to dismiss the indictment for speedy trial
        violations. ...........................................................................13

J.      The Chief Judge suspends criminal jury trials in the Eastern
        District of Virginia through January 19, 2021. .................................14

K.      The district court continues defendant's trial pending resolution
        of the motion to dismiss the indictment. .............................................15

L.      The district court holds a hearing on defendant's motion to
        dismiss and continues the trial date to January 20, 2021. ...................16

M.      The district court continues defendant's trial date to March 8,
        2021. ...................................................................................18

N.      The district court denies defendant's motion to dismiss based
        on a violation of the STA. ....................................................................19

O.      The district court denies defendant's motion to dismiss based
        on a violation of his Sixth Amendment right to a speedy trial. ..........22

P.      Defendant proceeds to trial on March 9, 2021, and the jury
        convicts him of both counts. ................................................................24

Q.      The district court denies defendant's motion for a judgment of
        acquittal. ...........................................................................................27

R.      The district court sentences defendant to 144 months'
        imprisonment, and defendant appeals. ................................................27

Summary of Argument ...........................................................................27

Argument...................................................................................................29

I.      Defendant's right to a speedy trial under the STA was not violated............29

A.      The district court properly excluded the period from March 16,
        2020 through September 13, 2020 under § 3161(h)(7)(A). ...............32

B.    The district court properly excluded the period from July 2,
      2020 through September 22, 2020 under § 3161(h)(7)(A). ...............40

C.    The district court properly excluded the period from September
      24, 2020 through November 19, 2020 under § 3161(h)(7)(A). ..........41

D.    The district court properly excluded the period from October
      21, 2020 to January 27, 2021 under § 3161(h)(1)(D). ......................44

E.    The district court properly excluded the period from January 19,
      2021 through March 8, 2021  under § 3161(h)(7)(A). .......................45

II.   Defendant's Sixth Amendment right to a speedy trial was not violated. ......46

A.    The length of the delay was presumptively prejudicial but not
      extraordinary. .................................................................................47

B.    The reasons for the delay were valid and weigh in the
      government's favor ..........................................................................48

C.    Defendant did not timely assert his right to a speedy trial. ................51

D.    The pretrial delay did not prejudice defendant. ................................54

III.  Sufficient evidence supported the jury's verdict that defendant sold
      fentanyl to the confidential informant. ........................................................56

Conclusion .....................................................................................................58

Statement Regarding Oral Argument ....................................................................59

Certificate of Compliance ......................................................................................59

Certificate of Service ..............................................................................................60

# Table of Authorities

## Cases

*Barker v. Wingo*, 407 U.S. 514 (1972) ..................................................28

*Beavers v. Haubert*, 198 U.S. 77 (1905) ............................................45

*Doggett v. United States*, 505 U.S. 647 (1992) .................................47

*Furlow v. United States*, 644 F.2d 764 (9th Cir. 1981) ........................33

*In re Smith*, 854 F. App'x 158 (9th Cir. 2021) ...................................37

*United States v. Abdush-Shakur*, 465 F.3d 458 (10th Cir. 2006) .........46

*United States v. Bell*, 925 F.3d 362 (7th Cir. 2019) ...........................43

*United States v. Bieganowski*, 313 F.3d 264 (5th Cir. 2002) ...............46

*United States v. Briggs*, 471 F. Supp. 3d 634 (E.D. Pa. 2020) ............49

*United States v. Brown*, 333 F. App'x 743 (4th Cir. 2009) ..................57

*United States v. Bryant*, 417 F. App'x 220 (4th Cir. 2008) .................54

*United States v. Bryant*, No. 96-4359, 1998 WL 39393 (4th Cir. Feb. 2, 1998) ....41

*United States v. Brunson*, No. 2:20-cr-413 DBB, 2021 WL 2982062 (D. Utah July 15, 2021) ..............................................................49

*United States v. Burgess*, 684 F.3d 445 (4th Cir. 2012) ......................46

*United States v. Carey*, 746 F.2d 228 (4th Cir. 1984) .........................31

*United States v. Crawley*, 644 F. App'x 259 (4th Cir. 2016) ...............54

*United States v. Correa*, 182 F. Supp. 2d 326 (S.D.N.Y. 2001) ..........34

*United States v. Daychild*, 357 F.3d 1082 (9th Cir. 2004). ................42

*United States v. Durbesula*, No. 1:20-cr-90-MR-WCM, 2020 WL 6572640 (W.D.N.C. Nov. 8, 2020) ..........................................................38

*United States v. Eccleston*, 615 F. App'x 767 (4th Cir. 2015) .............50

*United States v. Ellis*, 781 F. App'x 271 (4th Cir. 2019) ............... 37, 39

*United States v. Foster*, 507 F.3d 233 (4th Cir. 2007) ........................56

*United States v. Gates*, 709 F.3d 58 (1st Cir. 2013) ...................... 42, 44

*United States v. Gordillo-Escandon*, 832 F. App'x 158 (4th Cir. 2020) .......... 39-40

*United States v. Green*, No. 4:20-cr-1 (MSD), 2020 WL 6561278 (E.D. Va. Nov. 9, 2020) ............................................................................38

*United States v. Hall*, 551 F.3d 257 (4th Cir. 2009) ......................46-48, 51, 54, 55

*United States v. Henry*, 538 F.3d 300 (4th Cir. 2008) .........................................40

*United States v. Herbst*, 666 F.3d 504 (8th Cir. 2012) .........................................42

*United States v. Holley*, 813 F.3d 117 (2d Cir. 2016) ..........................................44

*United States v. Hudson*, 462 F. App'x 357 (4th Cir. 2012) .................................43

*United States v. Jarrell*, 147 F.3d 315 (4th Cir. 1998) ........................................47

*United States v. Lloyd*, 645 F. App'x 273 (4th Cir. 2016) ....................................48

*United States v. Loughrin*, 710 F.3d 1111 (10th Cir. 2013) ................................44

*United States v. Lynch*, 726 F.3d 346 (2d Cir. 2013) ..........................................42

*United States v. McRae*, No. CR 119-125, 2021 WL 359258 (S.D. Ga. Jan. 19, 2021) ....................................................................................50

*United States v. Nance*, 666 F.2d 353 (9th Cir. 1982) ........................................47

*United States v. O'Dell*, 247 F.3d 655 (6th Cir. 2001) ........................................47

*United States v. Olsen*, 995 F.3d 683 (9th Cir. 2021) ..............................30, 33-35

*United States v. Reyes-Canales*, Crim. No. JKB-17-589, 2020 WL 1955578 (D. Md. Apr. 23, 2020) ..................................................................38

*United States v. Rice*, 746 F.3d 1074 (D.C. Cir. 2014) ........................................47

*United States v. Richman*, 600 F.2d 286 (1st Cir. 1979) .....................................34

*United States v. Saintil*, 705 F.2d 415 (11th Cir. 1983) .......................................47

*United States v. Santiago-Becerril*, 130 F.3d (1st Cir. 1997) ..............................47

*United States v. Satterfield*, 254 F. App'x 947 (4th Cir. 2007) ...........................48

*United States v. Schoolfield*, 282 F. App'x 274 (4th Cir. 2008) ..........................58

*United States v. Scott*, 245 F. App'x 391 (5th Cir. 2007) .....................................34

*United States v. Shealey*, 641 F.3d 627 (4th Cir. 2011) .......................................46

*United States v. Shellef*, 718 F.3d 94 (2d Cir. 2013) ...........................................45

*United States v. Shepard*, 462 F.3d 847 (8th Cir. 2006) ......................................47

*United States v. Skinner*, No. 3:19cr19 (MHL), 2021 WL 1725543 (E.D. Va. Apr. 29, 2021) ..............................................................................50

*United States v. Stewart*, 729 F.3d 517 (6th Cir. 2013) ..........................................45

*United States v. Stine*, 664 F. App'x 697 (10th Cir. 2016) ....................................45

*United States v. Stoudenmire*, 74 F.3d 60 (4th Cir. 1996) ......................................31

*United States v. Taplet*, 776 F.3d 875 (D.C. Cir. 2015) ..........................................44

*United States v. Taylor*, 900 F.2d 779 (4th Cir. 1990) .....................................57-58

*United States v. Taylor*, Crim. No. 18-198 (JEB), 2020 WL 7264070 (D.D.C. Dec. 10, 2020) ..............................................................................50

*United States v. Torres-Bocanegra*, Crim. No. 19-792 (FAB), 2021 WL 2429519 (D.P.R. June 14, 2021) ..............................................................................50

*Zedner v. United States*, 547 U.S. 489 (2006) ................................................ 29, 40

**Statutes**

18 U.S.C. § 3161 ................................................................................ passim

**Introduction**

After defendant Quotez Pair sold fentanyl to a confidential informant during two controlled buys, he was indicted on January 21, 2020 for two counts of distributing fentanyl. His jury trial was originally set for April 6, 2020.

In March 2020, the COVID-19 pandemic created a public health emergency that caused a massive disruption of everyday activities. In response to rising COVID-19 cases and hospitalizations in the Eastern District of Virginia ("EDVA"), the Chief Judge suspended all jury trials in EDVA for most of 2020. The Chief Judge reasoned that having many potential jurors crowded into one courtroom for jury selection could spread disease, selected jurors may be distracted given the health risks of spending all day in a courtroom, witnesses may be unavailable during trial, and counsel may not have adequate opportunities to confer with defendants about their cases. Accordingly, the Chief Judge found that continuing all criminal jury trials served the ends of justice and that the resulting delay should be excluded from all speedy trial calculations under 18 U.S.C. § 3161(h)(7)(A). Based on these orders, the district court continued defendant's trial date to September 30, 2020.

On September 18, 2020, counsel for defendant was diagnosed with a retinal tear, and she risked permanent blindness in one eye absent immediate surgery. Over defendant's objection, she moved to continue the trial date. Because

defendant wished to proceed to trial with new counsel as soon as possible, the district court appointed new counsel and set a new trial date of December 7, 2020.

On October 21, 2020, counsel for defendant filed a motion to dismiss the indictment for speedy trial violations. The district court scheduled an evidentiary hearing for December 7, 2020 and continued defendant's trial date pending resolution of the motion to dismiss.

The Chief Judge later issued additional orders suspending all jury trials in EDVA through February 28, 2021. Ultimately, defendant proceeded to trial before a jury on March 8, 2021, and the jury convicted him after hearing testimony from a confidential informant and detective about the controlled buys, watching videos of the controlled buys, and listening to recorded calls with defendant.

### Issues Presented

1. Did the district court err in denying defendant's motion to dismiss the indictment under the Speedy Trial Act?

2. Did the district court err in denying defendant's motion to dismiss the indictment for a violation of his Sixth Amendment right to a speedy trial?

3. Did sufficient evidence support the jury's conclusion that defendant was the person who sold fentanyl to the confidential informant?

## Statement of the Case

### A.     After two controlled buys, a grand jury indicts defendant for two counts of distributing fentanyl.

On October 30, 2019, Timothy Newton, a confidential informant, conducted a controlled buy of what he thought was one ounce of heroin from defendant. JA442–44, 482.  On November 12, 2019, Newton conducted a second controlled buy of what he thought was two ounces of heroin from defendant.  JA448–49, 491–92, 529.  Laboratory analysis later revealed that the drug Newton purchased from defendant during both controlled buys was fentanyl, not heroin.  JA489, 536.

On January 21, 2020, a grand jury sitting in Richmond, Virginia returned an indictment charging defendant with two counts of distributing fentanyl, in violation of 21 U.S.C. § 841(a)(1).  JA18–19.  Defendant was arrested on January 30, 2020 and made his initial appearance on the indictment on January 31, 2020.  JA21.  On February 5, 2020, defendant had his detention hearing and arraignment.  JA22. The matter was set for a jury trial to begin on April 6, 2020.  JA22.

**B.**   **The Chief Judge suspends criminal jury trials in the Eastern District of Virginia from March 16, 2020 through May 1, 2020 due to the COVID-19 pandemic.**

On March 11, 2020, the World Health Organization declared COVID-19 a pandemic.[1]  On March 12, 2020, Virginia Governor Ralph Northam declared a state of emergency in the Commonwealth of Virginia due to the public health threat posed by COVID-19.  Va. Exec. Order No. 51 (Mar. 12, 2020).[2]  On March 13, 2020, President Donald Trump declared a national emergency.  Proclamation No. 9994, 85 Fed. Reg. 15,337 (Mar. 13, 2020).

On March 13, 2020, Chief Judge Mark S. Davis of the United States District Court for the Eastern District of Virginia issued General Order 2020-02.[3]  The order noted that the Governor of the Commonwealth of Virginia had declared a state of emergency; classes at Virginia state universities and many K–12 public schools had been canceled or temporarily suspended; and the number of confirmed cases of COVID-19 in EDVA was rising each day.  *Id.* at 2.  Accordingly, the

---

[1] *CDC Museum COVID-19 Timeline* (Aug. 4, 2021), https://www.cdc.gov/museum/timeline/covid19.html.

[2] *Available at* https://www.governor.virginia.gov/media/governorvirginiagov/governor-of-virginia/pdf/eo/EO-51-Declaration-of-a-State-of-Emergency-Due-to-Novel-Coronavirus-(COVID-19).pdf.

[3] *Available at* https://www.vaed.uscourts.gov/sites/vaed/files/General%20Order%202020-02.pdf.

order suspended all civil and criminal jury empanelments, jury trials, and grand jury proceedings in EDVA from March 16, 2020 through April 17, 2020. *Id.* at 3. With respect to criminal trials, the court ordered that "the time period of the continuances implemented by this Order will be excluded under the Speedy Trial Act," finding that "the ends of justice served by ordering the continuances outweigh[ed] the best interests of the public and each defendant in a speedy trial." *Id.* at 4 (citing 18 U.S.C. § 3161(h)(7)(A)).

On March 23, 2020, Chief Judge Davis issued General Order 2020-06, supplementing the court's previous finding that the "ends of justice" supported excluding the period of delay resulting from General Order 2020-02 under the STA.[4]  First, the court noted that the jury selection process "inherently involves a crowded courtroom, sometimes requiring prospective jurors to spend an entire day, or longer, crowded onto bench seats where they cannot avoid physical contact." *Id.* at 2–3 (emphasis omitted).  Second, "even if th[e] Court could manage to safely select a jury in the midst of the COVID-19 outbreak," it found that it "could not adequately protect the safety of jurors in light of the fact that they need to sit

---

[4] *Available at* https://www.vaed.uscourts.gov/sites/vaed/files/Gen%20Order%202020-06%20Speedy%20Trial.pdf.

together, listen to evidence together, and deliberate together through group collaboration and discussion." *Id.*

Third, the court had "grave concerns as to whether jurors could provide their full and complete attention during a multi-day or multi-week federal trial in light of the health risks." *Id.* at 4. "Seating a distracted jury and/or a jury impatient to end the trial in order to promote their own physical well-being and to care for loved ones would result in a miscarriage of justice and undermine the fairness and integrity of our criminal justice system." *Id.* Fourth, the court determined that "if a trial were to proceed, there would inevitably be issues with witness availability in light of the ongoing outbreak of COVID-19," noting that the State of Maryland had already issued a "stay at home" order and that other states were likely to do the same. *Id.* at 5.

Accordingly, the court found that "the ends of justice outweigh[ed] the best interest of the public and the defendants" in a speedy trial, and that "the failure to grant such a continuance would prevent the completion of full and fair jury proceedings and result in a miscarriage of justice." *Id.* at 5–6.

On March 24, 2020, Chief Judge Davis issued General Order 2020-07, which continued all civil and criminal proceedings in EDVA through May 1,

2020.[5]  The court ordered that the time period from April 18, 2020 through May 1, 2020 would be excluded from speedy trial calculations under § 3161(h)(7)(A).  *Id.* at 7.

On March 30, 2020, Governor Northam issued a statewide stay-at-home order, effective from March 30, 2020 through June 10, 2020.  Va. Exec. Order No. 55 (Mar. 30, 2020).[6]

### C.    The district court grants the government's unopposed motion to continue the trial date from April 6, 2020 to May 27, 2020 due to the COVID-19 pandemic.

On March 31, 2020, the government moved to continue the trial date from April 6, 2020 to a date on or before May 27, 2020.  JA27.  Counsel for defendant did not oppose the motion.  JA31.

On April 6, 2020, the district court granted the government's motion.  JA34. The court incorporated the findings in General Orders 2020-02, 2020-06, and 2020-07 and found that "under 18 U.S.C. § 3161(h)(7)(A), the ends of justice outweigh[ed] the best interest of the public and the defendants in a speedy

---

[5] *Available at* https://www.vaed.uscourts.gov/sites/vaed/files/2020-07%20-%20Court%20Operations.pdf.

[6] *Available at* https://www.governor.virginia.gov/media/governorvirginiagov/executive-actions/EO-55-Temporary-Stay-at-Home-Order-Due-to-Novel-Coronavirus-(COVID-19).pdf.

indictment, and a speedy trial, and that the failure to grant such a continuance would prevent the completion of full and fair jury proceedings and result in a miscarriage of justice." JA34. The court canceled the April 6, 2020 trial date and extended the period for commencing defendant's trial to May 27, 2020. JA34.

### D. Defendant's first and second attorneys withdraw from the representation.

On April 22, 2020, defendant filed a pro se letter asking the district court to "appoint [him] another attorney because [he was] not getting represented the right way." JA35. Defendant asserted that "[n]o motions were filed on [his] behalf," that his "rights ha[d] been violated," and that the magistrate judge had been shown "falsified evidence" to obtain an indictment. JA35.

On April 23, 2020, defendant's first attorney, Mary K. Martin, moved to withdraw from the representation. JA38. She explained that "the attorney-client relationship [was] hopelessly compromised." JA38. On April 29, 2020, the district court granted the motion. JA41.

On May 25, 2020, defendant's second attorney, Gerald T. Zerkin, moved to withdraw from the representation. JA42. He explained that he was "at high-risk for serious, including life-threatening consequences, should he become infected, due to both age and having a compromised immune system from medication he takes." JA41. On May 26, 2020, the district court granted the motion. JA44.

**E.** **The Chief Judge suspends criminal jury trials in the Eastern District of Virginia from May 2, 2020 through September 13, 2020 due to the COVID-19 pandemic.**

On April 10, 2020, Chief Judge Davis issued General Order 2020-12, which continued all civil and criminal in-person proceedings through June 10, 2020.[7] The court ordered that the period from May 2, 2020 through June 10, 2020 would be excluded from speedy trial calculations under § 3161(h)(7)(A). *Id.* at 6–7. The court found that "the expanding number of COVID-19 hospitalizations and deaths in Virginia, and the statewide 'stay home' order [] in place through June 10, 2020, mandate[d] a robust response from [the] Court to protect the public health" and concluded that "the need to protect the health of the public in the midst of a deadly nationwide pandemic outweigh[ed] the rights of the impacted defendants, and the public, to a speedy trial." *Id.* at 7.

On May 26, 2020, Chief Judge Davis issued General Order 2020-16, which lifted restrictions on certain in-person proceedings effective June 11, 2020.[8] The order provided, however, that no criminal jury trials would be conducted before

---

[7] *Available at* https://www.vaed.uscourts.gov/sites/vaed/files/Gen%20Order%202020-12%20Court%20Operations%20Updated%20Notices.pdf.

[8] *Available at* https://www.vaed.uscourts.gov/sites/vaed/files/Gen%20Order%202020-16%20Phased%20Expansion%20of%20Court%20Operations.pdf.

July 7, 2020.  *Id.* at 3.  The court explained that "[j]ury trials involve additional

exposure risks that necessitate[d] a further reduction in COVID-19 cases within

our District before they [could] be safely conducted."  *Id.* at 3–4.

On June 30, 2020, Chief Judge Davis issued General Order 2020-19, which

provided that criminal jury trials would resume in EDVA on or after September 14,

2020.[9]  The court noted five factors that it had considered: (1) COVID-19 cases,

hospitalizations, and fatalities in Virginia and in the United States; (2) the modified

juror information packet; (3) the need for approximately seven weeks to ensure

that prospective jurors "receive their summons in the mail and have sufficient time

to return it"; (4) the "need to ensure a fair trial with a focused jury that can operate

without fear and is selected from a fair cross-section of the community"; and

(5) additional preparations required to modify the court's "physical spaces to allow

for the safe resumption of jury trials."  *Id.* at 3–21.  The court found that the period

of delay from July 7, 2020 through September 13, 2020 would be excluded from

speedy trial calculations under § 3161(h)(7)(A).  *Id.* at 22.

---

[9] *Available at*
https://www.vaed.uscourts.gov/sites/vaed/files/Gen%20Order%202020-19%20-
%20Resumption%20of%20Criminal%20Jury%20Trials.pdf.

**F.     The district court sets the case for trial on September 30, 2020.**

The district court held a series of conference calls on June 22, June 25, and July 1, 2020 to set a date for defendant's trial. JA44–58, 61–70, 71. The parties agreed that defendant's speedy trial clock would run on October 12, 2020. JA72–73. The district court attempted to schedule the trial date as soon as jury trials would resume. JA73. Ultimately, the court scheduled the trial to begin on September 30, 2020, the first date on which defense counsel would be available. JA74. Defendant's trial "was to be the second [trial] held in the Richmond Division [of EDVA] since the beginning of the pandemic." JA307.

On July 2, 2020, the district court issued an order finding that, under § 3161(h)(7)(A) and consistent with General Order 2020-19, "the ends of justice served by granting a continuance outweigh[ed] the best interest of the public and the defendant in a speedy trial." JA77.

**G.     The district court denies defendant's pro se motions to appoint new counsel.**

On August 21, 2020, defendant filed a pro se letter asking the district court to appoint him new counsel. JA78. He maintained that his lawyer had failed to file motions on his behalf and that his indictment was "defective" but that he could not get his "counsel to file the proper motions." JA78. On August 24, 2020, defendant filed another pro se letter seeking new counsel. JA82. He asserted that

11

his lawyer "failed to file the proper motions" on his behalf and that his indictment was "defective" and lacked sufficient evidence.  JA82.

On September 3, 2020, the district court held a sealed hearing with defendant and his counsel regarding his letter motions for new counsel.  JA90. Finding that defendant did not desire to obtain new counsel, the district court denied his motions.  JA90.

## H.  The district court grants defense counsel's motion to continue based on her need for urgent surgery and sets the case for trial on December 8, 2020.

On September 18, 2020, defendant's third attorney, Ann Reardon, moved to continue defendant's trial.  JA105.  She explained that she had been diagnosed with a medical condition requiring urgent surgery, and the surgery was scheduled for September 29, 2020, the same day jury selection for defendant's trial was to begin.  JA105.  The government did not object to the continuance.  JA105.

On September 21, 2020, the district court held a conference call regarding the motion.  JA107–20.  Counsel for defendant explained that late in the afternoon of September 17, her doctor diagnosed her with a retinal tear requiring surgery. JA108.  On September 18, she called to schedule the surgery and learned that the first available date for the operation was September 29, 2020.  JA109.  Defense counsel indicated that she did not yet know what the recovery time for the surgery would be.  JA109–10.  Further, she had informed defendant that she planned to

move for a continuance, and he indicated that he did "not waive speedy trial" and did "not want this continued." JA110.

On September 22, 2020, the district court held a hearing on the motion to continue. JA121–25. Defense counsel indicated that defendant preferred "to move the case forward as soon as possible," rather than wait for her to recover from surgery to proceed to trial. JA123. The district court confirmed with defendant that he understood the situation and that he wished to have new counsel appointed. JA124–25. Accordingly, the court granted defense counsel's motion to continue. JA128–29.

On September 24, 2020, following a conference call with newly appointed counsel for defendant, the district court scheduled trial for December 8, 2020. JA129–30. The court found that it was "in the interest of justice" to "grant the newly appointed defense counsel's request for adequate time for trial preparation." JA130. Further, the court found that "the interest of justice served by granting the continuance outweigh[ed] the interest of the defendant and the public [in] a speedy trial within the time prescribed by 18 U.S.C. § 3161." JA130.

## I. Defendant moves to dismiss the indictment for speedy trial violations.

On October 5, 2020, defendant filed a letter motion asserting that his "constitutional rights [were] being violated." JA131. He alleged that he had "been waiting for trial since January 30, 2020" and that he should have gone to trial by

13

April 10, 2020. JA131. He complained that his "last counsel was ineffective because she failed to object and to make sure [his] speedy trial rights were protected." JA132. In response, the district court directed defense counsel to discuss the issues raised in the letter with defendant and file any necessary motions by October 23, 2020. JA135. On October 21, 2020, counsel for defendant filed a motion to dismiss the indictment for violation of his right to a speedy trial. JA136–41.[10]

### J. The Chief Judge suspends criminal jury trials in the Eastern District of Virginia through January 19, 2021.

On November 16, 2020, Chief Judge Davis issued General Order 2020-22, which suspended criminal jury trials from November 16, 2020 to January 19, 2021.[11] The court explained that the "pause in jury trial operations [was] necessitated by worsening local conditions and trend lines as well as expert analysis concluding that conditions [would] continue to worsen during the next two months as more people gather[ed] together in indoor enclosed spaces." *Id.* at 5.

---

[10] Defendant also filed a pro se letter to the court alleging that the indictment was defective. JA150. His counsel asked the court to designate the letter a pro se motion, explaining that she could not "ethically argue that the indictment is defective to a degree warranting dismissal." JA156. The district court denied the letter motion as meritless. JA337–39.

[11] *Available at* https://www.vaed.uscourts.gov/sites/vaed/files/Gen%20Order%202020-22%20%20-%20Temporary%20Suspension%20of%20Jury%20Trials.pdf.

The court found that the period from November 16, 2020 through January 18, 2021 would be excluded from speedy trial calculations under § 3161(h)(7)(A). *Id.* at 6–7.

### K. The district court continues defendant's trial pending resolution of the motion to dismiss the indictment.

On November 19, 2020, the district court scheduled an evidentiary hearing for December 7, 2020 regarding defendant's motion to dismiss the indictment for speedy trial violations. JA151. The court also continued defendant's trial, which was scheduled to begin on December 8, 2020, until after the resolution of the motion to dismiss. JA152. The court found that the continuance was "in the interest of justice because it allow[ed] for early resolution of the motion to dismiss." JA152.

On November 23, 2020, defendant filed an objection to continuing his trial pursuant to General Order 2020-22. JA153–54.

On December 8, 2020, the district court ordered the parties to file position statements "identifying the number of excluded days for purpose[s] of calculating the trial date under the Speedy Trial Act." JA184. Defendant maintained that only 90 days were properly excluded from the speedy trial calculation and that 222 days of non-excludable delay had elapsed. JA187. The government asserted that 328 days were excludable through January 18, 2021. JA192.

**L.    The district court holds a hearing on defendant's motion
to dismiss and continues the trial date to January 20,
2021.**

On December 9, 2020, the district court held a hearing on the motion to

dismiss the indictment.  Counsel for the government appeared remotely because

she had been exposed to an individual who tested positive for COVID-19 and was

required to quarantine for 14 days.  JA202.

Ann Reardon, defendant's former attorney, testified.  She stated that

defendant's "position ha[d] always consistently been that he want[ed] to be tried as

soon as possible."  JA205.  She recalled the events leading up to her withdrawal

from the representation.  She explained that she "had a retinal tear," which put her

at risk for blindness in one eye.  JA206; *see also* JA211.  Accordingly, her doctor

"instructed [her] to not exercise, not jump up and down, not run, not jog, not carry

anything heavy, not bend over, . . . until he could do the surgery."  JA206.

Because of the tear, she was "having a lot of cloudiness constantly" in her vision.

JA207.  When she called her doctor to schedule the surgery, he wanted to schedule

it for September 29.  JA206.  Reardon told the scheduler that she had a jury trial

that day and asked to schedule it for the following week, but the scheduler told her

"that date was outside the time that [the doctor] wanted the surgery to be done."

JA206.

Additionally, she explained that she purposefully styled her motion to continue as one by defense counsel, not by defendant, because defendant had told her that "he wanted the trial to go forward and not be continued." JA208. Reardon acknowledged that she had been prepared to proceed to trial on September 29 and that, if not for the medical diagnosis, she would have proceeded on September 29. JA212–13. Reardon confirmed that after she withdrew from the representation, she had the required surgery on September 29. JA209.

The district court inquired whether defendant had ever asked Reardon to file a motion to protect his speedy trial rights, and she said no. JA215–216. She also stated that she did not tell defendant that the judge had asked her to waive his speedy trial rights. JA216.

At the conclusion of the hearing, the district court set the case for trial on January 19, 2021, the earliest possible date for a criminal jury trial in EDVA. JA225; *see* JA309. In a subsequent order, the district court found that it was "in the interest of justice to have the trial" on that date "to afford the defendant the earliest trial consistent with the protective objectives of General Order 2020-22 and to assure that his case is heard by a jury that is safely empaneled and in a trial setting that provides the maximum safety for all participants." JA234. The court found that "the ends of justice served therein outweigh[ed] the best interest of the public and the defendant in a speedy trial." JA234.

**M.    The district court continues defendant's trial date to March 8, 2021.**

On January 8, 2021, Chief Judge Davis issued General Order 2021-01, which extended the temporary suspension of all criminal jury trials through February 28, 2021.[12]  The court explained that the suspension was "necessitated by the unprecedent spike in COVID-19 cases, hospitalizations, and deaths occurring in Virginia, and [EDVA], over the last eight weeks." *Id.* at 6.  The court found that the period from January 19, 2021 through February 28, 2021 would be excluded from speedy trial calculations under § 3161(h)(7)(A). *Id.* at 10.

On January 12, 2021, the district court continued defendant's trial date from January 20, 2021 to March 8, 2021.  JA303A.  March 8 "was the earliest date possible due to other criminal trials scheduled in the courthouse and defense counsel's availability."  JA309 n.5.  The court incorporated the speedy trial findings of General Order 2021-01 and found that the record in this case supported those findings, given that counsel for the government had to quarantine after her potential exposure to COVID-19.  JA303B.  The court determined that the

---

[12] *Available at* https://www.vaed.uscourts.gov/sites/vaed/files/Gen%20Order%202021-01%20-%20Temporary%20Suspension%20of%20Jury%20Trials%20Grand%20Jury%20and%20Misdemeanor%20Docket.pdf.

continuance served the ends of justice and outweighed the best interest of defendant and the public in a speedy trial. JA303B.

### N. The district court denies defendant's motion to dismiss based on a violation of the STA.

On January 27, 2021, the district court issued a memorandum opinion denying defendant's motion to dismiss the indictment based on a violation of the STA. JA304. The court found that the speedy trial clock began to run on February 1, 2020, the day after defendant made his initial appearance. JA313. The court determined that five periods of delay were properly excluded from the speedy trial calculation. JA313.

First, the court found that February 5, 2020 was excluded under § 3161(h)(1) because that was the day on which defendant was arraigned. JA313.

Second, the court found that the period from March 16, 2020 through September 13, 2020 was excluded under § 3161(h)(7). JA313–28. The court "explicitly incorporate[d] by reference the reasons given in General Orders 2020-02, 2020-06, 2020-07, 2020-12, 2020-16, and 2020-19 for finding that the ends of justice" served by the continuances granted in those General Orders "outweigh[ed] the best interest of the public and the defendant in a speedy trial under § 3161(h)(7)(A)." JA317.

The court also determined that the General Orders rested on proper considerations. JA317–21. Until the court had "implemented numerous changes

19

to its physical facilities, the jury selection process, and the trial process," the court reasonably concluded that "continuing jury trials struck the appropriate balance between 'the health and safety of jurors and prospective jurors, court employees, criminal defendants, counsel, judges, and the public with the Constitutional responsibility to continue federal court operations during the COVID-19 outbreak.'" JA319 (quoting General Order 2020-19 at 22–23). Further, the court had to consider whether it "could guarantee defendants a focused jury, an adequate opportunity for counsel to work safely (or at all) with the defendant to prepare a defense, and a jury that represents a cross-section of the community." JA320 (citing General Order 2020-06 at 4).

Additionally, the court determined that the General Orders complied with the STA "by making specific factual findings that appl[ied] to all criminal defendants in the District, including Pair." JA322. Moreover, defendant's "circumstances and the effect of the pandemic on his case and the convening of a jury . . . to decide it [did] not differ from the findings made in the General Orders." JA326. Defendant did "not dispute the General Orders' factual findings, argue that the General Orders' findings [did] not apply in his case, or articulate how his individual circumstances should change the Court's ends-of-justice analysis." JA328.

Third, the court found that its July 2, 2020 order continuing defendant's trial until September 30, 2020 properly excluded under § 3161(h)(7)(A) the period from July 2, 2020 through September 22, 2020, when the court issued a new order continuing the trial date. JA329.

Fourth, the court found that its September 24, 2020 order continuing defendant's trial until December 7, 2020 properly excluded under § 3161(h)(7)(A) the period from September 24, 2020 through November 19, 2020, when the court issued a new order continuing the trial date. JA329. The court rejected defendant's argument that the delay should not be excluded because his former counsel requested the continuance based on her need to have surgery, not on his behalf. JA330. The court reasoned that it could grant an ends-of-justice continuance based on a motion of defendant, a motion of defense counsel, "or neither." JA331. And "consent of the defendant is not listed among the various factors that a court should consider when granting an ends-of-justice continuance." JA331. Moreover, defendant did "not challenge either his counsel's basis for the continuance" or "the Court's finding that continuing the trial date to December 7 was necessary to allow new counsel adequate time to prepare." JA334.

Fifth, defendant conceded, and the district court found, that his motion to dismiss the indictment for violations of his speedy trial rights excluded the period from October 21, 2020 to January 27, 2021, the date of the court's ruling, under

§ 3161(h)(1)(D). JA335. The court added that the period from January 27, 2021 to February 10, 2021 would be excluded under § 3161(h)(1)(H) while the court decided defendant's motion to dismiss based on a Sixth Amendment speedy trial violation. JA335. Further, General Order 2021-01 excluded the period from January 19, 2021 through March 8, 2021 under § 3161(h)(7)(A). JA335 n.22.

The district court concluded that "at most 44 speedy trial days" had elapsed since February 1, 2020. JA335. Therefore, defendant's rights under the STA had not been violated. JA336.

## O. The district court denies defendant's motion to dismiss based on a violation of his Sixth Amendment right to a speedy trial.

On February 26, 2021, the district court issued a memorandum opinion denying defendant's motion to dismiss the indictment based on a violation of his Sixth Amendment right to a speedy trial. The court found that the four factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1972), weighed against finding a constitutional violation. JA350. First, the court determined that the length of the delay was presumptively prejudicial because defendant had been awaiting trial for more than one year. JA351–52. Second, the court found that the reasons for the delay (the COVID-19 pandemic and defense counsel's motion to continue to have urgent surgery) were "valid reasons" that weighed against finding that defendant's speedy trial right had been violated. JA356. The court rejected defendant's

22

argument that the delay related to COVID-19 should weigh against the government, explaining that "the Government [did] not bear the ultimate responsibility for the pandemic; the pandemic [was] outside of the control of either the parties or the courts." JA358.

Third, although defendant vigorously asserted his right to a speedy trial during the September 21, 2020 conference call, the court found that he failed to timely assert his right. JA362–63. Over a six-month period, "Chief Judge Davis had entered five General Orders continuing all criminal jury trials in [EDVA], the Court had entered an order extending Pair's speedy trial deadline, and Pair's trial had been rescheduled from its original April 6 date to September 30," but neither defendant nor his counsel had objected. JA363. The court found that "this factor [was] best considered as neutral." JA365.

Fourth, the court found that the prejudice prong weighed against finding a violation of defendant's speedy trial right. JA370. The court acknowledged that defendant had "faced oppressive pretrial incarceration and heightened anxiety and concern due to the COVID-19 pandemic." JA367. However, the court found that defendant had "not proven any impairment of his defense" resulting from the delay. JA368. Weighing the *Barker* factors, the court concluded that defendant's "Sixth Amendment right to a speedy trial ha[d] not been violated." JA371.

**P. Defendant proceeds to trial on March 9, 2021, and the
jury convicts him of both counts.**

Defendant proceeded to trial before a jury on March 9, 2021.

Detective Hunter Wallace of the Henrico Police Department and Detective
David Phillips of the Richmond Police Department testified that they were
assigned to the Drug Enforcement Administration ("DEA") task force in
Richmond. JA478–79, 511. They had been investigating an individual named
Timothy Newton for suspected drug trafficking. JA478–79, 543.

Timothy Newton testified that, before the events in this case, he had been
dealing heroin. JA439. He knew defendant, whom he called "Cortez," from their
interactions at the apartment of a woman named EZ, where people involved in
drug dealing would go to hide from police. JA440–41. Newton had been in the
neighborhood and going to EZ's apartment for about ten months, JA466–67.
Before his arrest, Newton and defendant had discussed doing business together.
JA462–63, 471–72. He made an in-court identification of defendant. JA435.

Additionally, Detective Phillips testified that he had known defendant since
2002. JA511. He also made an in-court identification of defendant. JA511.

Newton and the detectives testified that on October 29, 2019, Detective
Wallace and Detective Phillips arrested Newton and searched his house, where
they found heroin, firearms, and scales. JA436, 453–55, 479, 494–95, 543. The
officers explained to Newton that he could either "help[] himself out and provide

additional information on other drug distributors in the metro Richmond area" or "fac[e] immediate jail time." JA503. Newton agreed to cooperate with law enforcement on the spot. JA437.

On October 30, 2019, Newton conducted the first controlled buy. JA442, 482. In the presence of Detective Wallace and Detective Phillips, Newton called defendant to arrange a purchase. JA483, 514. The government played a video of Newton's call, and Newton confirmed that the man he was talking to was defendant. JA443. Detective Wallace gave Newton the money to buy the drugs. JA442, 483, 514. Detective Phillips gave Newton a wire, a camera, and a transmitter so that the officers could hear what was happening during the controlled buy. JA442, 484, 514–15. Newton proceeded to EZ's apartment and purchased one ounce of heroin from defendant. JA442–44. Detective Phillips testified that the officers "could hear everything" while the controlled buy was taking place. JA517. He also testified that he was familiar with the sound of defendant's voice and that he recognized defendant's voice on the transmitter. JA517.

The government played a video of the first controlled buy, and Newton confirmed that the man who provided him drugs in exchange for money was defendant. JA446. The government played the same video for Detective Phillips, who testified that he recognized the voice in the video as defendant's. JA525.

Detective Phillips also identified defendant in two still photographs taken from the video. JA540. He testified that he recognized tattoos on defendant's hand "as being consistent with the tattoos that [defendant] had at the time." JA541.

On November 12, 2019, Newton conducted the second controlled buy. JA448–49, 491, 529. This time, Newton called defendant twice while in the presence of Detectives Wallace and Phillips to arrange a purchase. JA492, 530. The government played a video of Newton's call, and he confirmed that the man he was talking to was defendant. JA448–49. Detective Phillips also identified defendant in the call. JA531–32. Detective Phillips gave Newton the money to buy the drugs, as well as a wire, a camera, and a transmitter so that the officers could hear what was happening during the controlled buy. JA492, 533. Newton proceeded to EZ's house and purchased two ounces of heroin from defendant. JA492.

The government played a video of the second controlled buy, and Newton confirmed that the man who provided him drugs in exchange for money was defendant, as did Detective Phillips. JA449–51, 538–39.

After the government rested its case, defendant did not introduce any evidence. *See* JA430.

On March 10, 2021, the jury found defendant guilty on both counts of distributing fentanyl. *See* JA13.

**Q.    The district court denies defendant's motion for a
        judgment of acquittal.**

On March 15, 2021, counsel for defendant filed a motion for a judgment of

acquittal, and defendant filed a pro se motion on March 25, 2021.  JA566–69,

JA579.

The district court denied both motions.  JA582–85.

**R.    The district court sentences defendant to 144 months'
        imprisonment, and defendant appeals.**

The court sentenced defendant to 144 months' imprisonment on both counts,

to run concurrently.  JA807.  On May 28, 2021, defendant filed a timely notice of

appeal.  JA812.

## Summary of Argument

The Court should affirm defendant's convictions for distributing fentanyl.

Defendant fails to establish that more than 70 days of non-excludable delay

elapsed under the STA between his first appearance and his trial.  The General

Orders relied on legitimate reasons for suspending jury trials in EDVA during the

COVID-19 pandemic, and the district court found that those reasons applied with

equal force to defendant's case.  Additionally, the district court properly granted

defense counsel's motion to continue based on her need to have corrective surgery

for a retinal tear.  The statute allows the court to grant a continuance requested by

defense counsel in the ends of justice, and courts of appeals have upheld such continuances even when granted over defendant's objection.

Second, the district court correctly denied defendant's motion to dismiss the indictment based on a Sixth Amendment speedy trial violation. The pretrial delay of approximately thirteen-and-one-half months was not extraordinary, and the primary reasons for the delay, including the suspension of jury trials in EDVA due to the COVID-19 pandemic and defense counsel's need to have urgent surgery, were valid reasons that were not attributable to the government. Because defendant did not assert his right to a speedy trial until approximately eight months after his indictment, or six months after the first General Order suspending jury trials, his assertion was untimely. Additionally, defendant failed to establish that the pretrial delay impaired his defense in any way. Therefore, the factors under *Barker v. Wingo*, 407 U.S. 514 (1972), do not weigh in favor of a constitutional violation.

Third, sufficient evidence easily supported the jury's finding that defendant was the person who sold fentanyl to the confidential informant. The confidential informant and a detective both identified defendant in the controlled buys, and the video, still photos, and recorded phone calls corroborated their testimony.

## Argument

## I.    Defendant's right to a speedy trial under the STA was not violated.

The STA requires that a defendant must be brought to trial within 70 days of the date of the indictment or the date the defendant has appeared before a judicial officer, whichever occurs later.  18 U.S.C. § 3161(c)(1).  The STA excludes several periods of delay in computing the time within which trial must begin.  For example, the STA excludes "delay resulting from other proceedings concerning the defendant," including "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  *Id.* § 3161(h)(1)(D).  The STA also excludes "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court."  *Id.* § 3161(h)(1)(H).

Further, the STA excludes

> [a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

*Id.* § 3161(h)(7)(A).  The "ends-of-justice continuances" provide "flexibility" under the STA, *Zedner v. United States*, 547 U.S. 489, 498 (2006), a flexibility

29

sufficient to address the pandemic, *United States v. Olsen*, 995 F.3d 683, 691 (9th Cir. 2021) (per curiam).

To exclude a period of delay under § 3161(h)(7)(A), the court must "set[] forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." *Id.* The statute enumerates several factors the court must consider before granting a continuance. Those factors include "[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceedings impossible, or result in a miscarriage of justice," *id.* § 3161(h)(7)(B)(i), and whether "the failure to grant such a continuance . . . would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence," *id.* § 3161(h)(7)(B)(iv).

If more than 70 days of non-excludable delay pass and the defendant has not been brought to trial, then the district court "shall" dismiss the indictment "on motion of the defendant." 18 U.S.C. § 3162(a)(2). The defendant bears the burden of proof on such motion. *Id.* This Court "reviews de novo legal conclusions of the district court related to its interpretation" of the STA and reviews for clear error

"factual findings" related to the STA.  *United States v. Stoudenmire*, 74 F.3d 60, 63 (4th Cir. 1996).

Defendant made his initial appearance on January 31, 2020.  JA21.  His speedy trial clock began to run the next day, February 1, 2020.  *See* 18 U.S.C. § 3161(c)(1); *United States v. Carey*, 746 F.2d 228, 229 n.1 (4th Cir. 1984). Defendant proceeded to trial on March 9, 2021, which was 402 days later. However, there were multiple overlapping periods of excludable delay resulting from the Chief Judge's General Orders suspending criminal jury trials in EDVA, defense counsel's request for a continuance based on her need for urgent surgery, and the filing and resolution of pretrial motions.  The table below sets forth the excludable periods of delay without including any overlapping days.

*Table 1: Periods of Delay Excluded under the Speedy Trial Act*

| Time Period | Number of Days | Reason | Statutory Provision |
|---|---|---|---|
| February 5, 2020 | 1 | Defendant's arraignment | 18 U.S.C. § 3161(h)(1) |
| March 16, 2020 through September 13, 2020 | 182 | General Orders 2020-02, 2020-07, 2020-12, 2020-16, and 2020-19 continuing all trials based on COVID-19 | 18 U.S.C. § 3161(h)(7)(A) |
| September 13, 2020 through September 23, 2020 | 11 | July 2, 2020 order continuing trial to September 30, 2020 based on COVID-19 | 18 U.S.C. § 3161(h)(7)(A) |

| Time Period | Number of Days | Reason | Statutory Provision |
|---|---|---|---|
| September 24, 2020 through October 20, 2020 | 27 | September 24, 2020 order continuing trial to December 7, 2020 based on defense counsel's need for surgery | 18 U.S.C. § 3161(h)(7)(A) |
| October 21, 2020 through January 11, 2021 | 83 | Filing of, hearing on, and disposition of defendant's motion to dismiss the indictment for speedy trial violations | 18 U.S.C. § 3161(h)(1)(D) |
| January 12, 2021 through March 8, 2021 | 56 | January 12, 2021 order continuing trial to March 8, 2021 based on COVID-19 | 18 U.S.C. § 3161(h)(7)(A) |
| **Total** | 360 | | |

In total, of the 402 days of delay, 360 days were properly excluded. Because only 42 days of non-excludable delay elapsed between defendant's first appearance and his trial, the district court correctly concluded that his right to a speedy trial under the STA was not violated.

**A.      The district court properly excluded the period from March 16, 2020 through September 13, 2020 under § 3161(h)(7)(A).**

The district court correctly found that the period from March 16, 2020 through September 13, 2020, when all criminal jury trials in EDVA were suspended, was excluded from defendant's speedy trial calculation under

§ 3161(h)(7)(A).  *See Olsen*, 995 F.3d at 695.  In *Olsen*, the defendant had been indicted in the Central District of California in July 2017 and was scheduled for a jury trial in October 2020.  *Id.* at 687–88.  Beginning on March 13, 2020, the Central District of California suspended all criminal jury trials.  *Id.* at 687.  In August 2020, over the defendant's objection, the government moved to continue the trial in the ends of justice from October 2020 to December 2020.  *Id.* at 688.  The district court denied the motion, finding that "nothing short of trial impossibility could permit additional delay" of the defendant's trial.  *Id.*

On appeal, the Ninth Circuit reversed and remanded with instructions to the district court to grant an ends-of-justice continuance.  995 F.3d at 695.  The court of appeals held that § 3161(h)(7)(A) does not require "literal impossibility" to hold a trial in order to grant an ends-of-justice continuance.  *Id.* at 690.  Instead, the district court's "'failure to grant' an ends of justice continuance . . . *did* make 'a continuation of [the defendant's] proceedings impossible" because it "meant that the Speedy Trial Act clock would necessarily expire before [the defendant] could be brought to trial."  *Id.* at 691 (quoting § 3161(h)(7)(B)(i)).  Further, the district court failed to consider non-statutory factors in deciding whether to grant an ends-of-justice continuance.  As the court of appeals correctly concluded, "surely a global pandemic that has claimed more than half a million lives in this country, and nearly 60,000 in California alone, falls within such unique circumstances to permit

33

a court to temporarily suspend jury trials in the interest of public health." *Id.* at

693. No court of appeals has reached a contrary conclusion regarding

ends-of-justice continuances required by the COVID-19 pandemic. Notably,

defendant relied heavily below on the district court's now-reversed decision in

*Olsen*. *See* JA242–43, 250, 253, 296–97, 301.

In other contexts, courts have determined that a public emergency was a

valid basis to continue a criminal trial in the ends of justice. *See, e.g.*, *United

States v. Scott*, 245 F. App'x 391, 394 (5th Cir. 2007) (per curiam) (delay caused

by Hurricane Katrina was excludable from the speedy trial clock); *Furlow v.

United States*, 644 F.2d 764, 768–69 (9th Cir. 1981) (per curiam) (delay caused by

a volcanic eruption was excludable from the speedy trial clock); *United States v.

Richman*, 600 F.2d 286, 293 (1st Cir. 1979) (delay caused by a "paralyzing

blizzard" was excludable from the speedy trial clock); *United States v. Correa*, 182

F. Supp. 2d 326, 329–30 (S.D.N.Y. 2001) (delay caused by the September 11,

2001 attacks on the World Trade Center was excludable from the speedy trial

clock).

Here, the district court correctly concluded, based on General Orders 2020-

02, 2020-06, 2020-07, 2020-12, 2020-16, and 2020-19, that the period from March

16, 2020 through September 13, 2020 was excludable under § 3161(h)(7)(A). The

Chief Judge issued General Order 2020-06 specifically to supplement the court's

previous finding that the ends of justice supported excluding the period of delay resulting from General Order 2020-02. The court reasoned that a continuance was necessary given the potential problems with social distancing and protecting against COVID-19 during jury selection and jury deliberation; concerns about jurors' ability to provide their full attention; and issues with witness availability. General Order 2020-02 at 4–5. Likewise, the Chief Judge's subsequent orders reflected a careful balancing of the court's responsibility to ensure the safety of all jurors and trial participants with the right of each defendant and the public to a speedy trial. *See, e.g.*, General Order 2020-7 at 7–8; General Order 2020-12 at 7; General Order 2020-16 at 3–4; General Order 2020-19 at 22.

In *Olsen*, the Ninth Circuit upheld the propriety of similar orders, concluding that "[t]he Central District of California did not cast aside the Sixth Amendment when it entered its emergency orders suspending jury trials based on unprecedented public health and safety concerns." 995 F.3d at 695. The emergency orders "ma[de] clear that the decision to pause jury trials and exclude time under the Speedy Trial Act was not made lightly." Indeed, "[t]he orders acknowledge[d] the importance of the right to a speedy and public trial both to criminal defendants and the broader public, and conclude that, considering the continued public health and safety issues posed by COVID-19, proceeding with such trials would risk the health and safety of those involved." *Id.* Similarly, here,

the General Orders supported the decision to exclude the time from March 16, 2020 through September 13, 2020 under § 3161(h)(7)(A).

The district court specifically referenced the General Orders when it continued defendant's trial date. In its April 6, 2020 order, which extended the speedy trial period to May 27, 2020, the court incorporated the findings in General Orders 2020-02, 2020-06, and 2020-07 and found that "the ends of justice outweigh[ed] the best interest of the public and the defendants in a speedy indictment, and a speedy trial, and that the failure to grant such a continuance would prevent the completion of full and fair jury proceedings and result in a miscarriage of justice." JA34. In its July 2, 2020 order, which continued the trial date to September 30, 2020, the district court issued an order finding that, under § 3161(h)(7)(A) and consistent with General Order 2020-19, "the ends of justice served by granting a continuance outweigh[ed] the best interest of the public and the defendant in a speedy trial." JA77. Further, in its opinion denying defendant's motion to dismiss based on a violation of the STA, the district court "explicitly incorporate[d] by reference the reasons given in General Orders 2020-02, 2020-06, 2020-07, 2020-12, 2020-16, and 2020-19 for finding that the ends of justice" served by the continuances granted in those General Orders "outweigh[ed] the best interest of the public and the defendant in a speedy trial under § 3161(h)(7)(A)." JA317.

Defendant vaguely asserts that the district court failed to make "specific findings" based on defendant's circumstances. Def. Br. 23. However, the district court's reasoned opinion was sufficient to satisfy § 3161(h)(7)(A). In granting an ends-of-justice continuance, the district court's findings "need not be lengthy and need not track the statutory language, but [they] should be enough to ensure that the district court considered the relevant factors and that this [C]ourt has an adequate record to review." *United States v. Ellis*, 781 F. App'x 271, 273 (4th Cir. 2019) (per curiam) (internal quotation marks omitted). Further, "the district court need not articulate facts which are obvious and set forth in the motion for the continuance itself." *Id.* (internal quotation marks omitted).

Here, the district court made specific findings that the reasons for granting the ends-of-justice continuances described in the General Orders applied with equal force to defendant's case. The district court reasoned that, until EDVA had "implemented numerous changes to its physical facilities, the jury selection process, and the trial process," the Chief Judge reasonably concluded that "continuing jury trials struck the appropriate balance between 'the health and safety of jurors and prospective jurors, court employees, criminal defendants, counsel, judges, and the public with the Constitutional responsibility to continue federal court operations during the COVID-19 outbreak.'" JA319 (quoting General Order 2020-19 at 22–23).

The district court also determined that the General Orders properly considered whether the court "could guarantee defendants a focused jury, an adequate opportunity for counsel to work safely (or at all) with the defendant to prepare a defense, and a jury that represents a cross-section of the community." JA320 (citing General Order 2020-06 at 4). These considerations adequately supported the district court's decision to exclude the time from March 16, 2020 through September 13, 2020. *See*, *e.g.*, *In re Smith*, 854 F. App'x 158, 160 n.1, 161 (9th Cir. 2021) (holding, where the Eastern District of California had suspended all jury trials, that the district court did not err when it granted an ends-of-justice continuance based on its finding that "the COVID-19 pandemic specifically affected the court's ability to conduct an in-person trial and that the trial could not safely occur in Sacramento before some time in 2021").[13]

Additionally, the district court determined that the General Orders complied with the STA "by making specific factual findings that appl[ied] to all criminal defendants in the District, including Pair." JA322. Moreover, the court explained,

---

[13] Other district courts in this Circuit have similarly found that periods of delay resulting from district-wide suspensions of jury trials due to the COVID-19 pandemic were excludable under § 3161(h)(7)(A). *See, e.g.*, *United States v. Green*, No. 4:20-cr-1 (MSD), 2020 WL 6561278, at *11 (E.D. Va. Nov. 9, 2020); *United States v. Durbesula*, No. 1:20-cr-90-MR-WCM, 2020 WL 6572640, at *3 (W.D.N.C. Nov. 8, 2020); *United States v. Reyes-Canales*, Crim. No. JKB-17-589, 2020 WL 1955578, at *2 (D. Md. Apr. 23, 2020).

defendant's "circumstances and the effect of the pandemic on his case and the convening of a jury . . . to decide it [did] not differ from the findings made in the General Orders." JA326. In fact, counsel for the government had to appear remotely for the hearing on defendant's motion to dismiss the indictment because she had been in contact with an agent who later tested positive for COVID-19 and counsel had to quarantine for 14 days. JA202. This event confirms that the findings supporting the General Orders and the district court's decision to continue the trial were correct.

Against the backdrop of the national public health crisis, the state of emergency in the Commonwealth of Virginia, and the restrictions on all in-person proceedings in EDVA due to the COVID-19 pandemic, the district court's thorough reasoning supported the ends-of-justice continuances. *Cf. United States v. Gordillo-Escandon*, 832 F. App'x 158, 163 (4th Cir. 2020) ("the reasons the district court found that the ends of justice were served by the continuance were [] crystal clear from the context"); *Ellis*, 781 F. App'x at 273 (although "the district court's reasoning was not detailed and did not discuss every factor," it "was sufficient" under § 3161(h)(7)(A) because "the court explicitly found, for each continuance, that the ends of justice would be served and outweighed the interests in a speedy trial").

Contrary to defendant's argument, Def. Br. 24, the district court complied with § 3161(h)(7)(A)'s procedural requirement by setting forth the findings supporting the ends-of-justice continuances in its opinion denying defendant's motion to dismiss the indictment. In *Zedner*, the Supreme Court instructed that the "best practice . . . is for a district court to put its findings on the record at or near the time when it grants the continuance." 547 U.S. at 507 n.7. But "at the very least[,] . . . those findings must be put on the record by the time a district court rules on a defendant's motion to dismiss." *Id.* at 507. After *Zedner*, this Court has repeatedly recognized that a district court complies with § 3161(h)(7)(A)'s procedural requirement if it sets forth the requisite findings by the time it rules on the defendant's motion to dismiss. *See United States v. Henry*, 538 F.3d 300, 304 (4th Cir. 2008); *see also, e.g.*, *Gordillo-Escandon*, 832 F. App'x at 162. Therefore, the district court did not err.

## B. The district court properly excluded the period from July 2, 2020 through September 22, 2020 under § 3161(h)(7)(A).

During a July 1, 2020 conference call with counsel, the district court attempted to schedule defendant's trial as soon as criminal trials would resume. JA73. The earliest possible date for trial was September 30, 2020, the first date on which defense counsel would be available. JA74. Accordingly, on July 2, 2020, the district court set trial for September 30, 2020 and found that, under

§ 3161(h)(7)(A) and General Order 2020-19, "the ends of justice served by granting a continuance outweigh[ed] the best interest of the public and the defendant in a speedy trial." JA77.

As discussed *supra*, the district court's decision to continue the trial date relied on proper considerations. And at the time, defendant's trial "was to be the second [trial] held in the Richmond Division [of EDVA] since the beginning of the pandemic." JA307. Defendant does not identify any defect with the district court's speedy trial finding.

### C. The district court properly excluded the period from September 24, 2020 through November 19, 2020 under § 3161(h)(7)(A).

The district court also did not err when it granted an ends-of-justice continuance on defense counsel's motion to allow her to have urgent surgery and to provide newly appointed defense counsel sufficient time to prepare for trial. The statute expressly authorizes the district court to grant an ends-of-justice continuance requested by defense counsel as distinct from one requested by defendant. *See* 18 U.S.C. § 3161(h)(7)(A) (excluding any period of delay resulting from an ends-of-justice continuance granted "at the request of the defendant *or his counsel*" (emphasis added)). In an unpublished decision, this Court has upheld a district court's decision to grant an ends-of-justice continuance requested by defense counsel over defendant's objection. *See United States v. Bryant*, No. 96-

4359, 1998 WL 39393, at *3 (4th Cir. Feb. 2, 1998) (per curiam) (holding that the period of delay resulting from a continuance granted over defendant's objection was excludable from the speedy trial clock, even though defense counsel, not defendant, requested the continuance).

*Bryant* is consistent with the decisions of other courts of appeals holding that delay resulting from a continuance requested by defense counsel, over defendant's objection, is excludable under the STA if the district court finds that the continuance would serve the ends of justice and sets forth those findings in the record. *See, e.g.*, *United States v. Gates*, 709 F.3d 58, 65–66 (1st Cir. 2013); *United States v. Lynch*, 726 F.3d 346, 356–57 (2d Cir. 2013); *United States v. Herbst*, 666 F.3d 504, 510 (8th Cir. 2012); *see also United States v. Daychild*, 357 F.3d 1082, 1094–95 (9th Cir. 2004).

Here, the district court correctly excluded the delay resulting from defense counsel's motion to continue. Defendant's third attorney, Ann Reardon, promptly moved to continue defendant's trial as soon as she learned that she would have to schedule surgery to repair a retinal tear on September 29, 2020, the same day jury selection for defendant's trial was to begin. JA105, 108–09. The district court held a hearing on the motion and confirmed with defendant that he preferred to proceed to trial as soon as possible with new counsel, rather than wait for Reardon to recovery from her surgery. JA124–25. On September 24, 2020, following a

conference call with newly appointed counsel, the district court scheduled trial on December 8, 2020. JA129–30. The court found that it was "in the interest of justice" to "grant the newly appointed defense counsel's request for adequate time for trial preparation." JA130.

As the district court correctly reasoned, "consent of the defendant is not listed among the various factors that a court should consider when granting an ends-of-justice continuance." JA331; *cf.* 18 U.S.C. § 3161(h)(7)(B). However, whether the failure to grant a continuance "would deny counsel for the defendant … the reasonable time necessary for effective preparation," is a factor the court "shall consider" in determining whether to grant an ends-of-justice continuance. 18 U.S.C. § 3161(h)(7)(B)(iv). Neither in the district court nor before this Court did defendant "challenge either his counsel's basis for the continuance" or "the Court's finding that continuing the trial date to December 7 was necessary to allow new counsel adequate time to prepare." JA334. Therefore, the district court did not err. *See, e.g.*, *United States v. Hudson*, 462 F. App'x 357, 358 (4th Cir. 2012) (per curiam) (holding that the district court did not err in granting continuance where it "specifically found that counsel needed the continuance to prepare for trial").

**D. The district court properly excluded the period from October 21, 2020 to January 27, 2021 under § 3161(h)(1)(D).**

In the district court, defendant conceded that his motion to dismiss the indictment excluded the period of delay from October 21, 2020, the date his counsel filed the motion, through January 27, 2021, the date the district court ruled on the motion. JA186 (listing "October 21, 2020 through Present" as excludable delay); *see also* JA335 (finding that defendant had conceded this period of delay was excludable). Defendant now challenges the delay excluded "through January 2021" but makes no argument in support of that challenge. Def. Br. 23. Because defendant did not challenge this period of delay in the district court, he has waived this challenge on appeal. *See, e.g.*, *United States v. Holley*, 813 F.3d 117, 121 (2d Cir. 2016) (per curiam); *United States v. Taplet*, 776 F.3d 875, 880–81 (D.C. Cir. 2015); *Gates*, 709 F.3d at 67–68; *United States v. Loughrin*, 710 F.3d 1111, 1120–21 (10th Cir. 2013); *see also United States v. Bell*, 925 F.3d 362, 374–75 (7th Cir. 2019).

Even if this Court reviews for plain error, the district court did not err in concluding that this period of delay was excludable under § 3161(h)(1)(D), which excludes delay "resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." *Id.* § 3161(h)(1)(D). This provision encompasses delay resulting from a

motion to dismiss the indictment based on a violation of the STA.  *See, e.g.*, *United States v. Stewart*, 729 F.3d 517, 523 (6th Cir. 2013); *United States v. Shellef*, 718 F.3d 94, 112 (2d Cir. 2013); *see also United States v. Stine*, 664 F. App'x 697, 700 (10th Cir. 2016).  Therefore, the district court did not err, much less plainly err, when it excluded the period during which defendant's motion was pending from the speedy trial clock.

### E. The district court properly excluded the period from January 19, 2021 through March 8, 2021  under § 3161(h)(7)(A).

Defendant has not challenged the exclusion of the period from January 19, 2021, his previous trial date, to March 8, 2021, his actual trial date, in this appeal or in the district court.  For the same reasons described *supra* that the district court did not err when it excluded the delay from March 16, 2020 to September 13, 2020 consistent with the General Orders, the district court did not err when it continued defendant's trial date to March 8, 2021 under § 3161(h)(7)(A).

* * *

Defendant failed to meet his burden of showing that more than 70 non-excludable days elapsed between his first appearance and his trial.  Therefore, the district court did not err when it denied his motion to dismiss under the STA.

## II. Defendant's Sixth Amendment right to a speedy trial was not violated.

The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The Supreme Court has observed that the right to a speedy trial "is necessarily relative. It is consistent with delays and depends upon circumstances." *Barker v. Wingo*, 407 U.S. 514, 522 (1972) (quoting *Beavers v. Haubert*, 198 U.S. 77, 87 (1905)). Characterizing the right as "amorphous," and "slippery," *id.* at 522, the Supreme Court held that the right cannot "be quantified into a specified number of days or months," *id.* at 523. Instead, the Supreme Court set forth a four-factor balancing test. *Id.* at 530. To determine whether a pretrial delay violates defendant's constitutional right to a speedy trial, the court must balance four considerations: "(1) whether the delay was uncommonly long; (2) what the reason was for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether prejudice resulted to the defendant." *United States v. Shealey*, 641 F.3d 627, 634 (4th Cir. 2011) (citing *Barker*, 407 U.S. at 530). "To prevail on [his] speedy trial claim," defendant must "establish that on balance, [the] four separate factors weigh in his favor." *United States v. Hall*, 551 F.3d 257, 271 (4th Cir. 2009) (internal quotation marks omitted). This Court "review[s] the district court's legal conclusions on this issue de novo, and its

factual findings for clear error." *United States v. Burgess*, 684 F.3d 445, 451 (4th Cir. 2012).

Congress enacted the STA "to effectuate the Sixth Amendment guaranty of a speedy trial." *United States v. Jarrell*, 147 F.3d 315, 316 (4th Cir. 1998). Consequently, courts of appeals have consistently recognized that "[i]t will be the unusual case . . . where the time limits under the Speedy Trial Act have been satisfied but the right to a speedy trial under the Sixth Amendment has been violated." *United States v. Bieganowski*, 313 F.3d 264, 284 (5th Cir. 2002); *see also United States v. Rice*, 746 F.3d 1074, 1081 (D.C. Cir. 2014); *United States v. Abdush-Shakur*, 465 F.3d 458, 464–65 (10th Cir. 2006); *United States v. Shepard*, 462 F.3d 847, 864 (8th Cir. 2006); *United States v. O'Dell*, 247 F.3d 655, 667 (6th Cir. 2001); *United States v. Santiago-Becerril*, 130 F.3d 11, 21 (1st Cir. 1997); *United States v. Saintil*, 705 F.2d 415, 418 (11th Cir. 1983) (per curiam); *United States v. Nance*, 666 F.2d 353, 360 (9th Cir. 1982).

## A. The length of the delay was presumptively prejudicial but not extraordinary.

The first *Barker* factor, the length of the delay, "involves two aspects." *Hall*, 551 F.3d at 271. First, "a reviewing court must decide whether the length of the delay triggers a speedy trial inquiry." *Id.* The Supreme Court has suggested that this Court "should conduct a full inquiry when such a delay approaches one year." *Id.* (citing *Doggett v. United States*, 505 U.S. 647, 651–52 & n.1 (1992)).

Second, "a reviewing court must weigh 'the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.'" *Id.* (quoting *Doggett*, 505 U.S. at 652).

Defendant was indicted on January 21, 2020 and proceeded to trial on March 9, 2021. Because the postaccusation delay exceeded one year, it was "presumptively prejudicial." *Burgess*, 648 F.3d at 452. Presumptive prejudice simply "marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Doggett*, 505 U.S. at 652 n.1. However, the delay of approximately thirteen-and-a-half months just barely "stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Hall*, 551 F.3d at 271 (quoting *Doggett*, 505 U.S. at 652). In the context of the district-wide suspension of all criminal jury trials due to the COVID-19 pandemic, the length of delay is not extraordinary. *See, e.g.*, *United States v. Lloyd*, 645 F. App'x 273, 277 (4th Cir. 2016) (per curiam) (15-month delay was not extraordinary); *United States v. Satterfield*, 254 F. App'x 947, 950 (4th Cir. 2007) (per curiam) (17-month delay was not extraordinary).

### B. The reasons for the delay were valid and weigh in the government's favor.

In evaluating the second *Barker* factor, the reason for the delay, the Court "must keep in mind that 'different weights should be assigned to different reasons.'" *Grimmond*, 137 F.3d at 828 (quoting *Barker*, 407 U.S. at 531). Some

reasons for delaying a trial, such as harassment, are improper and "weighted heavily against the government." *Id.* (quoting *Barker*, 407 U.S. at 531). Some reasons for delaying a trial, such as "an understaffed prosecutor's office," are neutral. *Id.* And some reasons for delaying a trial, such as "a missing witness," are valid and "weighted in favor of the Government." *Id.*

In this case, there were two primary reasons for the length of the delay: the suspension of all criminal jury trials in EDVA due to the COVID-19 pandemic and defense counsel's motion to continue so she could have urgent surgery. The district court correctly concluded that both reasons were valid and weighed in favor of the government.

Defendant maintains that the delays resulting from the continuances related to the suspension of criminal jury trials during the COVID-19 pandemic should be attributed to the government. Def. Br. 14–15. Notably, this argument charges responsibility for the delay to federal government officials generally, but not to the U.S. Attorney's Office specifically. Defendant does not identify any action the U.S. Attorney's Office could have taken to prevent the suspension of jury trials in EDVA. Moreover, the COVID-19 pandemic, and the consequent suspension of jury trials, affected all litigants in EDVA and was not particular to defendant. At no point did the government "deliberate[ly] attempt to delay the trial in order to hamper the defense." *Barker*, 407 U.S. at 531. Instead, throughout the

proceedings, the government promptly attempted to reschedule defendant's trial consistent with the General Orders.

Courts have found that pretrial delay resulting from the COVID-19 pandemic is a valid reason for delay that is not attributable to the government. *See, e.g.*, *United States v. Skinner*, No. 3:19cr19 (MHL), 2021 WL 1725543, at *28 (E.D. Va. Apr. 29, 2021) (finding that the reason for the delay resulting from "the unavoidable complications associated with the COVID-19 pandemic" weighed against defendant because, during the suspension of jury trials in EDVA, defendant "could not have faced a criminal jury trial in any event").[14] The same is true here.

Likewise, defendant's third counsel's motion to continue so that she could have urgent surgery to repair a retinal tear was a valid reason for delay. This Court has recognized in an unpublished decision addressing a motion to dismiss under the STA that "[u]navoidable health concerns are a valid reason for granting a reasonable delay." *United States v. Eccleston*, 615 F. App'x 767, 777 (4th Cir. 2015) (holding that the district court did not err when it granted the government's motion to continue "due to counsel's serious medical situation"). Here, given the

---

[14] *See also, e.g.*, *United States v. Brunson*, No. 2:20-cr-413 DBB, 2021 WL 2982062, at *2 (D. Utah July 15, 2021); *United States v. Torres-Bocanegra*, Crim. No. 19-792 (FAB), 2021 WL 2429519, at *4 (D.P.R. June 14, 2021); *United States v. McRae*, No. CR 119-125, 2021 WL 359258, at *4 (S.D. Ga. Jan. 19, 2021); *United States v. Taylor*, Crim. No. 18-198 (JEB), 2020 WL 7264070, at *9 (D.D.C. Dec. 10, 2020); *United States v. Briggs*, 471 F. Supp. 3d 634, 639 (E.D. Pa. 2020).

urgency of the medical diagnosis and the fact that the first available date for surgery was the first date of defendant's trial, defense counsel's risk of permanent blindness without the surgery was a valid reason to delay the trial.

Therefore, both the COVID-19 pandemic and defense counsel's need for urgent surgery were valid reasons for delay that weigh against a speedy trial violation.

### C.       Defendant did not timely assert his right to a speedy trial.

The third *Barker* factor is whether defendant timely asserted his right to a speedy trial. *Hall*, 551 F.3d at 272. Defendant's assertion of his right was untimely.

Defendant did not oppose the government's March 31, 2020 motion to continue the trial date from April 6, 2020 to a date on or before May 27, 2020 based on General Orders 2020-02 and 2020-07, which suspended jury trials until May 1, 2020. JA31. Nor, after Chief Judge Davis issued General Orders 2020-12, 2020-16, and 2020-19, which suspended jury trials until September 14, 2020, did defendant invoke his speedy trial right during the series of conference calls on June 22, June 25, and July 1, 2020 held to set a date for his trial. JA44–58, 61–70, 71. Instead, the defense agreed with the government that the speedy trial clock would run on October 12, 2020, JA72–73, and agreed to a trial date of September 30, 2020, the first date on which defense counsel was available, JA74. Only after his

third counsel moved to continue, during a September 21, 2020 conference call on the motion, did defendant object. He told his counsel, who relayed to the court, that he did "not waive speedy trial" and did "not want this continued." JA110.

By this time, eight months had passed since defendant's January 21, 2020 indictment. *See* JA18–19. And six months had passed during which "Chief Judge Davis had entered five General Orders continuing all criminal jury trials in [EDVA], the Court had entered an order extending Pair's speedy trial deadline, and Pair's trial had been rescheduled from its original April 6 date to September 30," but neither defendant nor his counsel had objected. JA363.

Defendant maintains that the assertion of his right was, in fact, timely because in March 2020, he "advised his counsel he did not want his case to be continued and requested an objection be noted," but his counsel "acquiesced to the Government's continuance request." Def. Br. 18–19. Defendant never raised this claim in the district court, *cf.* JA247–53, 298–302, and there is no evidence in the record to support it.

Now, he contends that his April 22, 2020 pro se letter to the court was his "effort to assert his rights in the absence of help from his" counsel. Def. Br. 19. However, that letter never mentioned speedy trial nor challenged defense counsel's consent to the continuance. Instead, defendant asked the district court to appoint him new counsel, asserting that "[n]o motions were filed on [his] behalf," that his

"rights ha[d] been violated," and that the magistrate judge had been shown "falsified evidence" to obtain an indictment. JA35. The next day, defendant's first attorney moved to withdraw from the representation, explaining that "the attorney-client relationship [was] hopelessly compromised." JA38.

Tellingly, defendant subsequently filed letters raising similar claims. On August 21, 2020, he filed a pro se letter asking for new counsel, asserting that his indictment was "defective" but that he could not get his "counsel to file the proper motions." JA78. And on August 24, 2020, defendant filed another pro se letter seeking new counsel. JA82. Again, he asserted that his lawyer "failed to file the proper motions" on his behalf and that his indictment was "defective" and lacked sufficient evidence. JA82. On November 15, 2020, defendant filed a pro se letter to the district court alleging that the indictment was defective. JA150. His current counsel asked the court to designate the letter a pro se motion, explaining that she could not "ethically argue that the indictment is defective to a degree warranting dismissal." JA156. In context, defendant's April 22, 2020 letter is best understood as challenging his first counsel's failure to file a motion to dismiss the indictment as defective, rather than any assertion of defendant's right to a speedy trial.

Because defendant did not assert his right to a speedy trial until September 21, 2020, his assertion was untimely. *See, e.g.*, *Grimmond*, 137 F.3d at 829 (holding that defendant's failure to assert his right to a speedy trial until four

months before the start of his trial was untimely).  The district court correctly concluded that this factor was, at best, neutral.

### D.     The pretrial delay did not prejudice defendant.

The fourth *Barker* factor, prejudice, weighs against defendant because he "failed to show the delay may have adversely impacted the defense." *Hall*, 551 F.3d at 272.  The Supreme Court has explained that prejudice "should be assessed in light of the interests of the defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532.  Those interests include: "(1) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

Defendant contends that he suffered prejudice from the delay because he was detained "during an unprecedented pandemic without the ability to exercise the [] proper health measures." Def. Br. 17.  He also asserts, without elaborating, that "his familial relationships and his employment were affected by his nearly year long pretrial incarceration." Def. Br. 17.  To be sure, individuals housed in correctional facilities faced serious risks during the COVID-19 pandemic.  At the same time, all defendants who were detained awaiting trial during the suspension of jury trials in EDVA faced those risks. *Cf. United States v. Crawley*, 644

F. App'x 259, 261 (4th Cir. 2016) (per curiam) (concluding that defendant's "generalized anxiety" awaiting trial did not establish prejudice).

The district court correctly determined that the prejudice factor weighed against a speedy trial violation because defendant failed to establish the delay impaired his defense. Defendant "has not identified any witness that was unavailable" or "unable to accurately recall the events in question," does not "contend that any exculpatory evidence was lost," and has not "identified any evidence that was unavailable because of the delay." *Grimmond*, 137 F.3d 823; *see also Hall*, 551 F.3d at 273. Because defendant has not shown that the delay impaired his defense in any way, this factor does not weigh in favor of a speedy trial violation. *See, e.g.*, *United States v. Bryant*, 417 F. App'x 220, 222 (4th Cir. 2008) (per curiam) ("Although [the defendant] was incarcerated pending his trial and doubtless suffered some anxiety while awaiting his first and second trial, nothing indicates that [the defendant's] ability to mount his defense suffered in any respect.").

* * *

On balance, the *Barker* factors weigh against a Sixth Amendment speedy trial violation. The district court did not err when it denied defendant's motion to dismiss the indictment.

**III. Sufficient evidence supported the jury's verdict that defendant sold fentanyl to the confidential informant.**

Defendant maintains that there was insufficient evidence to support the jury's verdict because the testimony of the confidential informant, Timothy Newton, was insufficient to establish that defendant was the person who sold him fentanyl. Def. Br. 29–30. This Court "view[s] the evidence in the light most favorable to the government and inquire[s] whether there is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Foster*, 507 F.3d 233, 245 (4th Cir. 2007). Defendant "faces a heavy burden." *Id.* "In evaluating the sufficiency of the evidence," this Court "do[es] not review the credibility of the witnesses and assume[s] that the jury resolved all contradictions in the testimony in favor of the government." *Id.*

The trial evidence easily establishes that defendant sold fentanyl to Newton. Newton testified that he had been going to EZ's apartment, where he met defendant, for about ten months, JA440–41, 466–67, and that, before he was arrested, he and defendant had discussed doing business together. JA471–72. Likewise, Detective David Phillips testified that he had known defendant since 2002. JA511. Both Newton and Detective Phillips made in-court identifications of defendant. JA435, 511. Newton described the controlled buys at length for the jury. JA442–44, 448–51.

56

At trial, the government played recordings of Newton's calls to defendant to set up the controlled buys. Newton confirmed that the man he was talking to was defendant. JA443, JA448–49. The government also played the recordings of Newton's calls to set up the second controlled buy for Detective Phillips, who testified that he recognized it was Newton talking to defendant. JA531–32. The government also played videos of both controlled buys. Newton confirmed that, on both occasions, the man who provided him drugs in exchange for money was defendant. JA446, 449–51. Likewise, Detective Phillips testified that he recognized the voice of the other individual in both videos as defendant's. JA525, 538.

Additionally, Detective Phillips identified defendant in two still photographs taken from the video of the first controlled buy. JA540. He testified that he recognized tattoos on defendant's hand "as being consistent with the tattoos that [defendant] had at the time." JA541. Detective Phillips also identified defendant in a still photograph taken from the video of the second controlled buy. JA539.

This evidence easily established defendant sold Newton fentanyl. *See, e.g.*, *United States v. Taylor*, 900 F.2d 779, 782 (4th Cir. 1990) (holding that there was "ample evidence for the jury to infer that the Henry Taylor at the defense table was the same Henry Taylor who committed the crime" where an informant "testified extensively about his earlier contacts with Taylor and about purchasing the drugs

from Taylor"); *see also United States v. Brown*, 333 F. App'x 743, 744 (4th Cir. 2009) (per curiam) (relying on confidential informant's testimony to uphold conviction); *United States v. Schoolfield*, 282 F. App'x 274, 275 (4th Cir. 2008) (per curiam) (same).

## Conclusion

The Court should affirm the judgment of the district court.

Respectfully submitted,

Raj Parekh
Acting United States Attorney


_____/s/_____
Olivia L. Norman
Assistant United States Attorney

## Statement Regarding Oral Argument

The United States respectfully suggests that oral argument is not necessary in this case. The legal issues are not novel, and oral argument likely would not aid the Court in reaching its decision.

## Certificate of Compliance

I certify that this brief was written using 14-point Times New Roman typeface and Microsoft Word 2016.

I further certify that this brief does not exceed 13,000 words (and is specifically 12,991 words) as counted by Microsoft Word, excluding the table of contents, table of authorities, signature blocks, statement regarding oral argument, this certificate, the certificate of service, and any addendum.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.

_____/s/_____

Olivia L. Norman
Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of September, 2021, I electronically

filed the foregoing motion with the Clerk of the Court using the CM/ECF system,

which will send notice of the filing to all counsel of record.

                                               //s//

                                           Olivia L. Norman
                                           Assistant United States Attorney
                                           919 E. Main Street, Suite 1900
                                           Richmond, Virginia 23219
                                           (804) 819-5475
                                           olivia.emerson@usdoj.gov